_____
                             :

LATCHMIE TOOLASPRASHAD,     :
                             :      Civil Action
          Petitioner,    :      07-5157 (JBS)
                             :
          v.               :      **O P I N I O N**
                             :
JEFF GRONDOLSKY,          :
                             :
         Respondent.    :
_____:

APPEARANCE:

      Latchmie Toolasprashad, I.D. #10975-056
      Petitioner Pro Se
      F.C.I. Fort Dix
      Fort Dix, New Jersey 08640

**TABLE OF CONTENTS**

I.   Petitioner's Previous Legal Actions. . . . . . . . . . . 4

II.  Petitioner's Pending Legal Actions . . . . . . . . . . 22

     A.   Bivens-VII. . . . . . . . . . . . . . . . . . . 23

     B.   2241-III; the Instant Petition. . . . . . . . . 25

     C.   Supplement to the Instant Petition. . . . . . . . 33

     D.   Joint Reading of the Petition and Supplement. . . . 34

     E.   Post-Supplement Submissions In This Action. . . . . 35

III. Discussion. . . . . . . . . . . . . . . . . . . . . . 38

     A.   The Nature of Habeas Action and Pleading

         Requirements. . . . . . . . . . . . . . . . . . 38

     B.   Claims Not Cognizable Under § 2241. . . . . . . . 42

         1.   Expungement Claims. . . . . . . . . . . . . 45

              a.   Complete Expungement of the BOP Report. . 45

        b.     Partial Expungement.. . . . . . . . . .  48

     2.    Curative/Future Parole Hearing Claims. . . . .  51

        a.     Parole Hearing Conducted by a Single

             Examiner. . . . . . . . . . . . . . . .  57

        b.     Presence of Audience and Life Testimony..  61

        c.     Examiner's Bias.. . . . . . . . . . . .  66

  C.  Habeas-like Claims. . . . . . . . . . . . . . . . .  75

     1.    <u>Mickens-Thomas</u>.. . . . . . . . . . . . . .  78

     2.    <u>Gambino v. Morris</u>. . . . . . . . . . . . .  80

     3.    <u>Wasman</u>, <u>Pearce</u>, <u>Bono</u> and <u>Marshall</u> Cases. . . .  81

     4.    <u>Solomon</u>, <u>Misasi</u>, <u>Dye</u>, <u>Billiteri</u> and <u>Persico</u>

        Cases. . . . . . . . . . . . . . . . . . . .  84

IV.  Conclusion.. . . . . . . . . . . . . . . . . . . . .  92

**SIMANDLE,** District Judge:

    Latchmie Toolasprashad ("Petitioner") is presently confined
at F.C.I. Fort Dix, New Jersey, serving a life term for contract
murder.  This matter is before this Court upon Petitioner's
filing of his petition for a writ of <u>habeas</u> <u>corpus</u>, pursuant to
28 U.S.C. § 2241 ("Petition").  <u>See</u> Docket Entry No. 1.  After
filing his Petition, Petitioner then filed a document titled
"amended petition" ("Supplement"), which, it appears, was
intended by Petitioner to operate as a supplement to, rather than
a substitute of, the original Petition.  <u>See</u> Docket Entries No.
2, 4.  Petitioner raises various civil rights claims and habeas-

like allegations.  As explained below, the present case will be

referred to as "2241-III," as it is but one of a long series of

related, often duplicative, filings by Mr. Toolasprashad.[1]

---

[1] For ease of reference, the Court has classified those of
Mr. Toolasprashad's legal actions, which are expressly discussed
in this Opinion, into the four groups: (a) § 2241 actions; (b) §
2255 petitions; (c) Bivens actions; and (d) mandamus actions.
Specifically, these groups contain the following:

(a)  § 2241 actions:
    1.    2241-I, Toolasprashad v. Beeler, Civ. Action No. 98-
        4983 (D.N.J.);
    2.    2241-II, Toolasprashad v. De Rosa, Civ. Action No. 02-
        2841 (D.N.J.);
    3.    2241-III, the instant matter.
(b)  § 2255 petitions:
    1.    2255-I, discussed in Toolasprashad v. United States,
        902 F.2d 30 (4th Cir. 1990);
    2.    2255-II, discussed in United States v. Toolasprashad
        1993 U.S. App. LEXIS 1557 (4th Cir. Jan. 28, 1993);
    3.    2255-III, discussed in United States v. Toolasprashad,
        1994 U.S. App. LEXIS 4486 (4th Cir. Mar. 14, 1994).
(c)  Bivens actions:
    1.    Bivens-I, Toolasprashad v. Henry, Civ. Action No. 98-
        1234 (M.D. Pa.);
    2.    Bivens-II, discussed in Toolasprashad v. Fed. Bureau of
        Prisons, 2007 U.S. App. LEXIS 25263 (3d Cir. Oct. 26,
        2007);
    3.    Bivens-III, Toolasprashad v. Cowan, Civ. Action No. 01-
        675 (M.D. Pa.);
    4.    Bivens-IV, Toolasprashad v. Wright, Civ. Action No. 02-
        5473 (D.N.J.);
    5.    Bivens-V, Toolasprashad v. Bureau of Prisons, Civ.
        Action No. 04-652 (D.D.C.);
    6.    Bivens-VI, Toolasprashad v. Bureau of Prisons, Civil
        Action No. 06-1187 (D.D.C.).;
    7.    Bivens-VII, Toolasprashad v. Williams, Civ. Action No.
        07-5860 (D.N.J.).
(d)  Mandamus actions:
    1.    Mandamus-I, discussed in Toolasprashad v. Bureau of
        Prisons, 2002 U.S. App. LEXIS 25145 (D.C. Cir. Dec. 6,
        2002);
    2.    Mandamus-II, discussed in In re Toolasprashad, 2003
        U.S. App. LEXIS 23589 (D.C. Cir. Nov. 18, 2003).

# I.    PETITIONER'S PREVIOUS LEGAL ACTIONS

Since the Petition and Supplement directly relate to many of Petitioner's past and ongoing litigations, this Court finds it helpful to begin this Opinion with a summary of some of these actions.  Petitioner's earliest actions concentrated on Petitioner's challenges to his convictions.[2]  See United States

---

[2] The incident underlying Petitioner's conviction took place on December 15, 1985, when Beverly Ann Dozler, a member of the United States Army stationed in Ft. Bragg, North Carolina, was killed at the entrance of her quarters by a blast from a sawed-off shotgun fired by James David Hamilton, a person hired by Petitioner to execute such killing.  See United States v. Toolasprashad, 1993 U.S. App. LEXIS 1557 (4th Cir. Jan. 28, 1993).  "Petitioner arranged for the murder of [Ms. Dozler] when she spurned his dating advances and marriage proposals[;] Petitioner hired . . . Hamilton to commit the murder in exchange for $20,000 and a new car."  Toolasprashad v. De Rosa, 02-2841 (JHR) (D.N.J.), Docket Entry No. 21, at 2.  Initially, Petitioner was declared incompetent to stand trial in light of his bizarre behavior after the victim's murder in which he claimed not to accept the fact of her death, even though his arrest took place when he was about to pay Hamilton for the murder.  See Toolasprashad, 1993 U.S. App. LEXIS 1557.  Consequently, Petitioner was committed to a medical facility for treatment.  When he became competent (changing, inter alia, his position as to the fact of the victim's death) and his trial was set, Petitioner was encouraged by his counsel to plead guilty to the first degree murder charge and, upon taking such plea, Petitioner was sentenced to life imprisonment.  Subsequently, Petitioner filed a pro se petition, pursuant to 28 U.S.C. § 2255, which was dismissed by the United States District Court for the Eastern District of North Carolina.  Petitioner appealed that ruling to the United States Court of Appeals for the Fourth Circuit, alleging that he received ineffective assistance of counsel and that his plea was involuntary.  The Fourth Circuit affirmed the dismissal of his § 2255 petition, holding that there was no reversible error in the district court's judgment (and finding that the ineffective assistance of counsel claim was already rejected on the merits in a decision addressing Petitioner's previous petition, Toolasprashad v. U.S., 902 F.2d 30 (4th Cir. 1990)).  See id.

v. Toolasprashad ("2255-III"), 1994 U.S. App. LEXIS 4486 (4th
Cir. Mar. 14, 1994); United States v. Toolasprashad ("2255-II"),
1993 U.S. App. LEXIS 1557 (4th Cir. Jan. 28, 1993); Toolasprashad
v. United States, ("2255-I"), 902 F.2d 30 (4th Cir. 1990).

His next set of actions arose from his allegations that,
upon his conviction, he began serving his life sentence "at the
federal correctional facility in Allenwood, Pennsylvania [where]
he and a female staff member had a sexual relationship."
Toolasprashad v. Beeler, App. No. 99-5512, Docket Entry No. 19
(opinion), at 2 and n.1 (3d Cir. 2000).[3]

> Apparently, as a disciplinary measure, [Petitioner] was
> transferred . . . to the federal correctional facility
> in Marianna, Florida . . . . [W]hile at FCI-Marianna,
> [Petitioner was written up in an incident report and
> charged with [two minor offenses].  Following a
> disciplinary hearing, [he] was found guilty . . . and
> sanction [to minor a sanction, which] was suspended in
> its entirety pending 180 days of clear conduct.  The
> sanction did not include loss of good time credit.
> [After being transferred to FCI Fort Dix, petitioner]
> filed [a] § 2241 [application (hereinafter "2241-I")
> alleging that the] Incident Report . . . was invalid
> because the staff [at FCI-Marianna] was racially biased
> [and] the Disciplinary Hearing Officer reneged on his
> promise to recommend that the Parole Commission not
> credit the incident Report in calculating [his] parole
> eligibility date.  [He] also alleged that [the
> aforesaid] actions . . . were taken in retaliation for

---

[3] The Court of Appeals' unpublished opinion detailed the
bases for its decision to affirm the District Court's ruling in
Toolasprashad v. Beeler.  The fact of the Court of Appeals'
affirmance was noted in the Federal Reported in Toolasprashad v.
Beeler, 234 F.3d 1266 (3d Cir. 2000) (affirmance without a
published opinion).

his having filed numerous grievances.[4]

Id. at 2-3.

Judge Irenas, presiding over Petitioner's 2241-I action, dismissed the petition, finding that: (a) Petitioner's due process rights were not violated during the administrative hearings, which fully comported to the requirements set forth in Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974); (b) Petitioner's liberty rights were not implicated by the transfer from FCI-Allenwood to FCI-Marianna; (c) no facts suggesting retaliatory motives were offered by Petitioner; and (d) the Parole Commission was allowed to rely on Petitioner's incident reports to determine his parole eligibility. See Toolasprashad v. Beeler ("2241-I"), Civ. Action No. 98-4983 (JEI) (D.N.J.), Docket Entry No. 15. The Court of Appeals for the Third Circuit affirmed Judge Irenas' decision, with clarification that--while Petitioner's § 2241 application indeed failed to allege a constitutional violation--"habeas relief [was] not available on [Petitioner's] claim[s] . . . . because he did not lose good time credit." Toolasprashad v. Beeler, 234 F.3d 1266 (3d Cir. 2000), App. No. 99-5512, Docket

---

[4] Simultaneously, Petitioner filed a civil action with the District of Maryland (from which the matter was transferred to the Middle District of Pennsylvania), challenging his transfer and disciplinary charges related to his sexual relationship with a female corrections officer, alleging that these actions were also taken in retaliation for his having filed numerous grievances. Toolasprashad v. Beeler, C.A. No. 99-5512, Docket Entry No. 19 (opinion), at 2 at 3 (citing Toolasprashad v. Henry, Civ. Action No. 98-1234 (M.D. Pa.) ("Bivens-I")).

Entry No. 19, at 4.  The Court of Appeals explained that "[a] suspended sentence to disciplinary confinement [is a decision of the type that does] not impact on a prisoner's release date and thus [does] not involve a significant liberty interest," amenable to § 2241 review.[5]  Id.

Then, in 1999, Petitioner filed a civil action in the United States District Court for the District of Columbia, pursuant to the Privacy Act, against the United States Bureau of Prisons ("BOP"), alleging that his transfer to another facility and reclassification as a special offender adversely affected him in several ways.  Upon the district court's decision granting the BOP's motion to dismiss Petitioner's complaint for insufficiency of pleadings, Petitioner appealed.  The United States Court of Appeals for the District of Columbia Circuit reversed and remanded, finding that the district court erred in dismissing the complaint, but solely because Petitioner's allegations (that the BOP failed to maintain accurate records regarding Petitioner's history of harassing and demeaning staff members and, in addition, included a certain memorandum containing false information in Petitioner's prison file, all in order to obtain

---

[5]  The Court of Appeals noted that the sole habeas claim, related to extension of Petitioner's parole eligibility date, was unexhausted and raised against the wrong entity, the Bureau of Prisons.  See Toolasprashad v. Beeler, App. No. 99-5512, Docket Entry No. 19, at 5-6 (3d Cir. 2000) (affirming Judge Irenas' decision in 2241-I).

basis for his transfer) met the liberal pleading requirements of
Rule 8, thus preventing dismissal of the complaint as
insufficiently pled. See Toolasprashad v. Bureau of Prisons, 286
F.3d 576 (D.C. Cir. 2002) (an intermediary decision in
Petitioner's Bivens-II line of cases).

It appears that Petitioner was moved to a correctional
facility in Pennsylvania during the time when the District of
Columbia was considering the above-discussed remand, and the case
was transferred to the United States District Court for the
Middle District of Pennsylvania. Judge Muir, presiding over that
matter, addressed the "false information" claim (i.e., the sole
claim that remained unresolved by the District of Columbia) and
resolved the matter in favor of the BOP.[6] Petitioner appealed
Judge Muir's decision to the United States Court of Appeals for
the Third Circuit, which affirmed Judge Muir's conclusion. See
Toolasprashad v. Fed. Bureau of Prisons ("Bivens-II"), 2007 U.S.
App. LEXIS 25263 (3d Cir. Oct. 26, 2007). Specifically, the
Court of Appeals agreed with Judge Muir's finding that Petitioner

---

[6] Specifically, Judge Muir focused on Petitioner's
contention that the BOP violated § 552a when it transferred him
to another correctional institution and classified him as a
"special offender" on the basis of allegedly false information
contained in a certain BOP memorandum. This memorandum discussed
Petitioner's disrespect for authority and his documented history
of harassing and demeaning correctional staff members, and stated
that he had disrupted the orderly running of a federal prison.
See Toolasprashad v. Fed. Bureau of Prisons (final decision in
the Bivens-II line of cases), 2007 U.S. App. LEXIS 25263 (3d Cir.
Oct. 26, 2007).

failed to show any material statement in the memorandum so inaccurate as to warrant monetary relief.  See id. at *4-6 and n.1 (combing through Petitioner's prison file supporting the statements in the BOP's memorandum stating that Petitioner disrupted the orderly running of a federal prison through his blatant disrespect for authority and harassment of correctional staff members).

It also appears that, around the same time when he began his challenge with respect to the BOP's memorandum in the District of Columbia, Petitioner filed another action in that court, that is, an application for a writ of mandamus alleging that the BOP violated his rights by offering him only a copy of the current Parole Commission Manual and failing to provide him with a copy of 1985-87 Parole Commission Manuals.  See Toolasprashad v. Bureau of Prisons ("Mandamus-I"), 2002 U.S. App. LEXIS 25145 (D.C. Cir. Dec. 6, 2002).  Upon the district court's denial of the writ, Petitioner appealed to the District of Columbia Circuit, which affirmed the district court's finding.[7]  See id.

---

[7] Apparently, during the same time period, Petitioner filed another application for mandamus trying to block his transfer to another correctional facility (located, presumably, in Pennsylvania).  The Court of Appeals for the District of Columbia Circuit affirmed the underlying district court's decision to deny the writ.  See In re Toolasprashad ("Mandamus-II"), 2003 U.S. App. LEXIS 23589 (D.C. Cir. Nov. 18, 2003).  It further appears that, right after the transfer, Petitioner filed another civil action, pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), admitting to his sexual relationship at FCI-Allenwood but alleging that he was forced to perform

On June 10, 2002, Petitioner filed another petition for a writ of <u>habeas</u> <u>corpus</u> in this District, pursuant to 28 U.S.C. § 2241. <u>See</u> <u>Toolasprashad v. De Rosa</u> ("<u>2241-II</u>"), Civ. Action No. 02-2841 (JHR), Docket Entry No. 1. Presiding over Petitioner's <u>2241-II</u> matter, Judge Rodriguez summarized the facts underlying that litigation, as well as Petitioner's challenges, as follows:[8]

> Petitioner was eligible for parole [consideration on] December 16, 1995 . . . On June 7, 1995, Petitioner received [his] initial parole hearing wherein he denied committing the crime; rather, he alleged that both he and his co-conspirator had been dating the victim, and that he was targeted because of his race.[9] The Parole Commission then rated the severity of Petitioner's offense as Category Eight . . . and found his guideline range to be 100 plus months. The Commission set Petitioner's reconsideration hearing for June 2010.

---

involuntary sexual acts with the female prison guard. <u>See</u> <u>Toolasprashad v. Cowan</u> ("<u>Bivens-III</u>"), Civ. Action No. 01-675 (M.D. Pa.) Upon recommendations of Magistrate Judge Smyser, Judge Muir dismissed Petitioner's action as time-barred, and that decision was affirmed by the Third Circuit. <u>See</u> <u>Toolasprashad v. Cowan</u>, 52 Fed. App. 189 (3d Cir. 2002).

[8] Petitioner's <u>2241-II</u> application came before Judge Rodriguez together with a host of Petitioner's motions, namely, a "motion for reconsideration of the denial of application for <u>pro bono</u> counsel, motion to retain a copy of [Petitioner's] presentence report, motion requesting [an] order to obtain and retain a copy of his presentence investigation report, motion requesting an order to obtain a U.S. Parole Commission manual [of 1985, 1986 and 1987], motion to grant the writ of <u>habeas</u> <u>corpus</u> and motion for a decision and/or appointment of a 'special master.'" <u>Toolasprashad v. De Rosa</u>, Civ. Action No. 02-2841, Docket Entry No. 21, at 1.

[9] Judge Rodriguez clarified that: (a) "Petitioner is a Guyana national of Hindu-Indian descent"; and (b) Hamilton, Petitioner's "[c]o-conspirator was also sentenced to life imprisonment." <u>Toolasprashad v. De Rosa</u>, Civ. Action No. 02-2841, Docket Entry No. 21, at 2, 4, nn. 2, 4.

Petitioner appealed [this] fifteen-year mandate, and the commission's decision was affirmed. [That decision] was again affirmed on administrative appeal following [the] interim hearing held on November 3, 1998. The [BOP] was then ordered to conduct a psychological evaluation of Petitioner before his next interim hearing. . . . Petitioner was evaluated as having Narcissistic Personality Disorder, a disorder in which individuals are generally unpredictable and have difficulty maintaining employment and relationships.[10] Petitioner's next interim hearing was held on August 22, 2001. After reviewing Petitioner's institutional achievements, the hearing examiner recommended that Petitioner's reconsideration date be advanced two years from June 2010 to June 2008. Upon review, two reviewing examiners disagreed . . . and ordered that the June 2010 hearing date remained unchanged. . . . Petitioner subsequently filed an administrative appeal . . . . The Board affirmed the decision [concluding that] : (1) the Commission's decision did not exceed the guideline range . . . .; (2) the initial decision was based on the record which established that petitioner denied his guilt [and] was without remorse; (3) information from the [BOP's] psychological report contradict[ed] Petitioner's claim that he [was] a good parole risk . . . ; (4) despite Petitioner's good behavior in the prison setting, his "indications of posturing and violent personality [were] sufficient to

---

[10] See Knock v. Sullivan, 1992 U.S. App. LEXIS 360, at *14, n.7 (7th Cir. Jan. 10, 1992) ("Narcissistic personality disorder has as its essential feature a grandiose sense of self-importance or uniqueness; preoccupation with fantasies of unlimited success, etc. By definition some impairment in interpersonal relations always exists. Occupational functioning may be impaired, or may be interfered with by depressed mood, interpersonal difficulties, or pursuit of unrealistic goals") (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 315-316 (3d Ed. 1986)); see also United States v. Cohen, 510 F.3d 1114, 1125 (9th Cir. 2007) ("a narcissistic personality disorder . . . can cause a person to continue to believe something to be true despite overwhelming evidence of its patent absurdity"); Brown v. Ornoski, 503 F.3d 1006, 1012 (9th Cir. 2007) ("narcissistic people often have a rich fantasy life and [a man suffering from such disorder may] imagine that he could somehow make things right with [the subject of his affection], make her fall in love with him, and even marry him").

deny parole"; and (5) even if Petitioner did not pose a
risk, parole [was properly] denied on the basis of just
punishment for a heinous crime.[11]  Petitioner objected
to the Board's denial of parole in his [§ 2241]
petition [in the 2241-II action.  In addition to
raising § 2255 challenges to his conviction,]
Petitioner claim[ed] that the Commission's decision did
not sufficiently credit his institutional
accomplishments, relied on outdated psychological
evaluations and discriminated against him as a Hindu-
Indian.  Petitioner requested that [Judge Rodriguez]
review transcripts of [Petitioner's] parole hearings, .
. . review Petitioner's case de novo, and release
Petitioner on parole.

Toolasprashad v. De Rosa ("2241-II"), Civ. Action No. 02-2841,

Docket Entry No. 21, at 2-4, 16.

Assessing Petitioner's 2241-II application, Judge Rodriguez:

(a) dismissed Petitioner's § 2255 claims for lack of

jurisdiction; (b) partially granted Petitioner's requests to

release his presentence reports to him; and (c) denied

Petitioner's requests as to Parole Commission manuals on the

grounds that "the Commission [did] not have the desired volumes

on file and [these volumes] are likewise inapplicable to

Petitioner's parole hearing."  Id. at 6-11, 14.  Then, turning to

Petitioner's challenges to the Commission's decision to deny him

both immediate parole and acceleration of his parole review date,

Judge Rodriguez explained to Petitioner that "[t]he role of the

court, in reviewing a within-guidelines parole decision, is . . .

---

[11] Apparently, Petitioner demanded immediate parole in
addition to his request to have his rehearing sooner than June
2010.

essentially limited to insuring that the guidelines were in fact followed, once the Commission has exercised its informed discretion." Id. at 15 (quoting Marshall v. Lansing, 839 F.2d 933, 950 (3d Cir. 1988)).  Since Petitioner's offense was both properly categorized by the Commission, and the guidelines set no upper limit for offenses like the one committed by Petitioner, Judge Rodriguez found no error as to the framework within which the Commission exercised its discretion.  See id. at 15-16. Similarly, Judge Rodriguez found no violations with respect to the Commission's discretionary considerations and held that: (a) Petitioner was not entitled to parole on the basis of his institutional accomplishments, since the accomplishments, while duly considered by the Commission, provide a merely permissible rather than mandatory basis for parole; and (b) Petitioner's contention that the Commission ignored the conclusions of Dr. Schwartz (a psychiatrist  who prepared a report stating that Petitioner had "no mental illness, no personality disorder and no physical disorder") because Petitioner was not paroled were without merit, since the record established the Commission's legitimate exercise of discretion in light of both Dr. Schwartz' report and the BOP's psychological report evaluating Petitioner with narcissistic personality disorder.  See id. at 12-13, 16-17.

Consequently, Judge Rodriguez dismissed Petitioner's § 2241

petition and later denied his motion for reconsideration.  See
id., Docket Entry No. 23.  Petitioner appealed these decisions to
the Court of Appeals for the Third Circuit, which affirmed Judge
Rodriguez' findings.  See Toolasprashad v. De Rosa, 122 Fed. App.
598 (3d Cir. 2005).  Subsequently, when Petitioner sought
certiorari from the Supreme Court of the United States, the
Supreme Court denied Petitioner's application.  See Toolasprashad
v. DeRosa, 545 U.S. 1122 (2005).

Five months after filing his aforesaid 2241-II petition
examined by Judge Rodriguez, Petitioner filed with this Court
another Bivens action asserting that he was denied access to the
prison commissary bathroom and water fountain during his work
shifts, that no chairs were made available for him while he was
working, and that prison employees obstructed his administrative
remedies, retaliated against him, and conspired to violate his
constitutional rights.  See Toolasprashad v. Wright ("Bivens-
IV"), Civ. Action No. 02-5473, 2005 U.S. Dist. LEXIS 36408
(D.N.J. Dec. 22, 2005).  Petitioner's claims were dismissed by
the undersigned upon consideration of the defendants' motion for
summary judgment, and that decision was affirmed by the Third
Circuit.[12]  See Toolasprashad v. Wright, 232 Fed. App. 208 (3d

---

[12]  Initially, the action was dismissed for failure to
exhaust administrative remedies.  However, upon Petitioner's
motion for reconsideration, certain claims presented in that
action were deemed duly exhausted.  See Toolasprashad v. Wright,
2006 U.S. Dist. LEXIS 54913, at *8 (D.N.J., Aug. 8, 2006).  These

14

Cir. 2007).

On April 23, 2004, while his Bivens-IV action was still pending with this Court, Petitioner filed another Bivens action with the District of Columbia.  See Toolasprashad v. Bureau of Prisons ("Bivens-V"), Civ. Action No. 04-652 (D.D.C.).  On July 2, 2004, that Bivens-V matter was transferred to this District and assigned to the undersigned.  See Toolasprashad v. Bureau of Prisons, Civil Action No. 04-3219 (JBS) (D.N.J.).

The factual statements made in Petitioner's Bivens-V complaint were, effectively, an extensive elaboration on the facts and contentions previously presented to Judge Rodriguez in 2241-II, supra.  This Court summarized Petitioner's elaborations as follows:

> On November 2, 1998, [Petitioner] appeared for a parole
> hearing [and was denied parole.  After the hearing,]
> the . . . Commission . . . requested that the [BOP]
> provide[d] a current psychological report [evaluating
> Petitioner.]  Psychology intern Defendant Dr. Jaime
> Berry prepared the BOP psychological report [for
> Petitioner], under the supervision of psychologist
> Defendant Dr. Kindra Pugh.  [Petitioner now] contends
> that the assessment was conducted improperly and that
> the resulting BOP psychological report [did] not
> accurately report [Petitioner's] behavior or
> psychological condition. . . . In addition,
> [Petitioner] contends that the diagnosis of . . .
> Narcissistic Personality Disorder . . . and other
> conclusions and recommendations contained in the report
> [were] incorrect. . . . After receiving the BOP
> psychological report, [Petitioner's] counsel arranged

_____

exhausted claims were considered and dismissed in this Court's ruling addressing the defendant's motion for summary judgment. See id.

15

for a second report by . . . Dr. Daniel Schwartz. . . . Dr. Schwartz submitted his report, appeared at [Petitioner's parole] hearing, . . . testified in favor of granting [Petitioner] parole [and] disputed Dr. Berry's diagnosis of Narcissistic Personality Disorder. [Petitioner, however,] was again denied parole and that denial was upheld on appeal to the . . . Board . . . . [Petitioner] contends that, [while] the BOP psychological report . . . could be construed as generally favorable, it is internally inconsistent and the Commission seized on certain of those inconsistencies to deny him parole. [Petitioner also] contends that the Commission did not consider Dr. Schwartz's report. Following this second denial of parole, [Petitioner] filed an Administrative Remedy with the BOP requesting that the BOP psychological report be amended to correct its various flaws. His requests were denied . . . . [Petitioner now] requests injunctive relief, in the form of (1) [expungement] of the [BOP's] psychological report prepared by Dr. Berry and Dr. Pugh [and] (2) a new parole hearing giving "equal weight" to the testimony and report of Dr. Schwartz.

Toolasprashad v. Bureau of Prisons ("Bivens-V"), 2006 U.S. Dist.

LEXIS 65175 (D.N.J. Sept. 13, 2006) (summarizing the findings

made in an earlier opinion issued in that action, Civil Action

No. 04-3219, Docket Entry No. 10 ("April Opinion")).

Addressing Petitioner's allegations, the undersigned noted

that it was indeed "appropriate for [Petitioner] to bring these

claims in a civil action for declaratory and injunctive relief,

as opposed to a habeas action," April Opinion at 6, n.5 (citing

Wilkinson v. Dotson, 125 S. Ct. 1242 (2005)), and "construe[d]

the Complaint as asserting claims that [Petitioner] was denied

due process in the preparation of the BOP psychological report

and in his parole hearing and claims under the Privacy Act . . .

for correction of records of the BOP and the Commission." Id. at 6.

The Court, however, dismissed both the due process and Privacy Act claims. With respect to Petitioner's due process claim, this Court explained in Bivens-V:

> There is no constitutional right to parole or to an error-free parole decision-making process. [See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) . . . . In Greenholtz, [the Supreme Court held that a parole statute might be so drafted as to] entitle [a prisoner] to some measure of constitutional protection," [but] the Court nevertheless rejected the suggestion that parole hearings should be full-scale adversary hearings. [Id.] at 12, 14. Instead, the Court found sufficient the . . . procedures that afford the prisoner an opportunity to be heard and, when parole is denied, that notify the prisoner in what respects he fell short of qualifying for parole. [Id.] at 16. In addition, . . . the Court of Appeals for the Eighth Circuit held that, in the absence of exceptional circumstances, a prisoner at a parole hearing has no constitutional right to call witnesses in his behalf or to confront and cross-examine adverse witnesses. [See Inmates of Nebraska Penal & Correctional Complex v. Greenholtz,] 576 F.2d 1274, 1284 (8th Cir. 1978), rev'd in part on other grounds, 442 U.S. 1 . . . . Assuming that the Federal Parole Act creates the same "expectation" of parole [as discussed] in Greenholtz, [Petitioner] has failed to state a claim that he was denied due process in the creation of the BOP psychological report or in the procedures employed by the Parole Commission. According to the allegations of the Complaint, [Petitioner] participated in the testing used to create the BOP psychological report, he was given a copy of the BOP psychological report in advance of the parole hearing, he was permitted to present both the live testimony and the report of his own psychological expert, he was permitted to appear and be heard at the parole hearing, he was given a statement of the reasons why he was denied parole, and he was permitted to appeal that decision. Thus, the Commission's procedures met the Greenholtz due process

17

requirements . . . . Cf. Furnari v. U.S. Parole Commission, 2005 WL 535390, *2 (3d Cir. March 8, 2005) (Commission has broad discretion in materials it can consider in making parole decision, and reliance on materials describing conduct other than the offense of conviction to set offense severity level does not implicate due process rights).  In addition, to the extent the Complaint could be construed as asserting a claim that [Petitioner] has a due process right to have false information expunged from his parole file, cf. Paine v. Baker, 595 F.2d 197 (4th Cir.), cert. denied, 444 U.S. 925 (1979), the Court of Appeals for the Third Circuit has never recognized such a cause of action, see Williams v. Federal Bureau of Prisons, 85 Fed. App. 299, 304 (3d Cir. 2004), and it is not clear that the Paine case remains good law even in the Fourth Circuit, see Johnson v. Rodriquez, 110 F.3d 299, 309 n.13 (5th Cir.), cert. denied, 522 U.S. 995 (1997).  In any event, [Petitioner] fails to state a claim even under the rule announced in Paine.  Under Paine, a prisoner must allege three elements in order to state a due process claim for expungement: (1) that particular information exists in his file, (2) that the information in his file is false, and (3) that the information is relied on to a constitutionally significant degree. [See] 595 F.2d at 201.  With respect to the second element, the Paine court stated,

> [I]t is not sufficient that the inmate disputes evaluations and opinions regarding him. [See] Williams v. Ward, 556 F.2d 1143 (2d Cir.), cert. dismissed, 434 U.S. 944 (1977) (inmate disagreed with psychiatric evaluations contained in file). . . . The federal courts will not oversee the discretionary decisions of prison administrators and second-guess their evaluations. [See id.] at 201.

As [Petitioner] presents the type of claim explicitly excluded by the Paine court, a challenge to a psychological evaluation, he does not state a due process claim for expungement of records contained in his BOP or parole file.

April Opinion at 7-11 (footnotes and original brackets omitted).

Turning to Petitioner's Privacy Act claim, this Court, in

18

Bivens-V, analogously explained to Petitioner that while, under 5 U.S.C. § 552a(g)(2)(A), "the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct, . . . [t]he BOP has exempted the Inmate Central Record System and the Inmate Physical and Mental Health Record System from . . . § 552a, [see] 28 C.F.R. § 16.97(a), (j), (n), [and] the Commission has exempted its records from the Privacy Act's amendment requirements . . . and its provision permitting injunctive relief against the agency § 552a(g)." April Opinion at 12 (citing also 28 C.F.R. § 16.85 and Deters v. U.S. Parole Commission, 85 F.3d 655, 658 n.2 (D.C. Cir. 1996)). Consequently, this Court dismissed Petitioner's Bivens-V action and, on September 13, 2006, denied his request to reopen that matter.

On June 29, 2006, while Petitioner's motion to reopen the Bivens-V matter was pending with this Court, Petitioner filed another Bivens complaint with the District of Columbia. See Toolasprashad v. Bureau of Prisons ("Bivens-VI"), Civil Action No. 06-1187 (ESH) (D.D.C.).[13] Addressing Petitioner's Bivens-VI

---

[13] Although the Bivens-VI matter was originated under the Freedom of Information Act (since Petitioner asserted that the BOP failed to release over 500 documents provided by Petitioner to psychology intern Defendant Dr. Jaime Berry), Petitioner amended his complaint in that matter after the District of Columbia granted the BOP's motion for summary judgment, see Toolasprashad v. Bureau of Prisons, 474 F. Supp. 2d 14 (D.D.C. 2007); in his amended complaint, Petitioner substituted his original claims alleging a violation of the Freedom of

claims, Judge Huvelle stated as follows:

> [Petitioner] filed an amended complaint . . . against
> the [BOP], the . . . Commission and five individuals
> (Kathleen Pinner, [Dr.] Kerr, Marcia Baruch, Jamie
> Berry and Kindra Pugh).  [Petitioner] challenges the
> use of an alleged inaccurate psychological report
> during parole proceedings, as well as the circumstances
> surrounding the preparation of the report.  Under the
> doctrine of res judicata, "the parties to a suit and
> their privies are bound by a final judgment and may not
> relitigate any ground for relief which they already
> have had an opportunity to litigate--even if they chose
> not to exploit that opportunity--whether the initial
> judgment was erroneous or not."  Hardison v. Alexander,
> 655 F.2d 1281 (D.C. Cir. 1981).  The doctrine of res
> judicata requires an identity of parties or their
> privies in the earlier and later suits.  A final
> judgment in one action "bars any further claim based on
> the same 'nucleus of facts,' for 'it is the facts
> surrounding the transaction or occurrence which operate
> to constitute the cause of action, not the legal theory
> upon which a litigant relies.'"  Page v. United States,
> 729 F.2d 818, 820 (D.C. Cir. 1984)(quoting Expert
> Elec., Inc. v. Levine, 554 F.2d 1227, 1234 (2d
> Cir.1977));  accord Velikonja v. Ashcroft, 355 F. Supp.
> 2d 197, 200-01 (D.D.C. 2005).  [Petitioner's] amended
> complaint involves the same parties and nucleus of
> facts that formed the basis of his previous complaint
> [in Bivens-III].  On April 4, 2005, the District of New
> Jersey issued an opinion addressing [Petitioner's]
> constitutional and Privacy Act claims and dismissing
> the [Bivens-III] case with prejudice [and then denied
> Petitioner's] motion to reopen [the Bivens-III action.
> Although Petitioner now] asserts that [his] Privacy Act
> claim is not barred because the use of the alleged
> inaccurate record to deny his release to parole is "an
> ongoing matter,' [since the] Commission's most recent
> denial in June 2006 was against the recommendation of
> "a retired BOP Chief Forensic Psychologist . . . with
> more than 30 years' experience [which] contradicted the
> intern's report," . . . [t]he Privacy Act is not "a
> vehicle for amending the judgments of federal officials
> or . . . other[s] . . . as those judgments are
> reflected in records maintained by federal agencies."

---

Information Act for Bivens-like claims.

> Kleiman v. Dep't of Energy, 294 U.S. App. D.C. 49, 956
> F.2d 335, 337-38 (D.C. Cir. 1992)(quoting Rogers v.
> U.S. Dep't of Labor, 607 F. Supp. 697, 699 (N.D.
> Cal.1985)). Thus, a "complaint not about the accuracy
> of records, but about the underlying decision they
> reflect" is not cognizable under the Privacy Act.
> Levant v. Roche, 384 F. Supp. 2d 262, 270 (D.D.C.
> 2005). [Consequently] the doctrine of res judicata bars
> [Petitioner] from relitigating [his due process and
> Privacy Act] claims . . . .

Toolasprashad v. Bureau of Prisons ("Bivens-VI"), 2007 U.S. Dist.

LEXIS 18949, at *1-6 (D.D.C. Mar. 19, 2007).

Judge Huvelle, therefore, dismissed Petitioner's Bivens-VI

action, see id. at *6, noting, inter alia, that the fact of

Petitioner's naming of Parole Examiner Kathleen Pinner as a

defendant in the Bivens-VI action did not affect the court's res

judicata analysis, even though Pinner was not named as a

defendant in Bivens-V, since Petitioner was "suing her for her

actions taken as an employee of the . . . Commission."[14]  See id.

at *3, n.1 (citing LoBue v. Christopher, 82 F.3d 1081, 1085 (D.C.

Cir. 1996)(relying, in turn, on Sunshine Anthracite Coal Co. v.

---

[14]  Judge Huvelle also noted that her decision did not
address alternative constitutional grounds that Petitioner might
have alleged in his Bivens-V action.  See  Toolasprashad v.
Bureau of Prisons, 2007 U.S. Dist. LEXIS 18949, at *5, n.2
(citing Settles v. U.S. Parole Comm'n, 368 U.S. App. D.C. 297,
429 F.3d 1098 (D.C. Cir. 2005), the case where a federal inmate
challenged the Commission's rule prohibiting the inmate's counsel
from being present at his parole hearing, and where the District
of Columbia Circuit found that, while the Commission was immune
from § 1983 liability for violations of the Administrative
Procedure Act, the rule denying legal representation violated the
Equal Protection Clause to the extent of warranting a Wilkinson-
like relief in the form of curative parole hearing with the
attorney present).

Adkins, 310 U.S. 381, 402-03 (1940))).

Petitioner appealed Judge Huvelle's decision to the Court of Appeals for the District of Columbia Circuit, which affirmed the district court's findings in Toolasprashad v. Bureau of Prisons, 2007 U.S. App. LEXIS 23275 (D.C. Cir., Oct. 1, 2007) (finding that "the motion for summary affirmance [should] be granted [because] the parties' positions are so clear as to warrant summary action").

## II. PETITIONER'S PENDING LEGAL ACTIONS

Petitioner has two actions currently pending in this District.  The instant § 2241 Petition ("2241-III") was filed three weeks after the District of Columbia Circuit affirmed the district court's decision by issuing its ruling in Toolasprashad v. Bureau of Prisons, 2007 U.S. App. LEXIS 23275 (D.C. Cir., Oct. 1, 2007).  On the same day, Petitioner also filed a new civil action complaint ("Bivens-VII"), which was assigned to Judge Kugler.  See Toolasprashad v. Williams, 07-5860 (RBK) (D.N.J.), Docket Entry No. 1.  Following the mode of his previous applications, Petitioner filed extremely voluminous submissions in both Bivens-VII and 2241-III.[15]

---

[15]  The sheer volume of Petitioner's submissions compounds their confusion and overlap with previously adjudicated cases. Petitioner's Bivens-VII submission consisted of 110 pages (application for in forma pauperis status excluded). Consequently, Judge Kugler dismissed Petitioner's Bivens-VII

### A.  __Bivens-VII__

In his __Bivens-VII__ action, Petitioner sued ten named prison officials, plus an unspecified number of "John and Jane Does," who are unnamed prison officials, all of whom are employed at Petitioner's current place of confinement, FCI Fort Dix.  __See Toolasprashad v. Williams__, Civ. No. 07-5860 (RBK).  Initially asserting that his original "[c]omplaint shall paint a clear picture" about the "Gestapo-style tactics" of these defendants, __see id.__, Docket Entry No. 1, at 1, Petitioner then proceeded with a series of confusing narratives.  The first narrative, of seven pages, was dedicated to the circumstances of Petitioner's allegedly retaliatory transfer, in spring of 2007, from a certain unit within the FCI Fort Dix to another unit, which Petitioner calls "East Gulag."[16]  __See id.__ at 2-9.  The next three-page

---

complaint for failure to comply with requirements of Rule 8 and administratively terminated that matter subject to reopening upon Petitioner's filing of an amended complaint complying with the aforeasaid requirements.  See Toolasprashad v. Williams, 07-5860 (RBK) (D.N.J.), Docket Entries Nos. 6, 7.  In response, Petitioner filed a 78-page submission.  See id., Docket Entry No. 8.  Petitioner's instant Petition is a 158-page submission (without the 8-page Supplement).  Petitioner's 2241-I application was 64 pages long.  Petitioner's 2241-II application was 33 pages, with 78 pages of accompanying motions, totaling 111 pages. Petitioner's previous Bivens applications were equally voluminous.  In addition, Petitioner is using 11-point font and packs 29 lines per page.  See, e.g., Bivens-VII, Docket Entry No. 1, and 2241-III, Docket Entry No. 1.

[16]  Petitioner clarifies that F.C.I. Fort Dix consists of "three separate [G]ulags."  __See__ Toolasprashad v. Williams, 07-5860, Docket Entry No. 1, at 6, n.5.

narrative discussed alleged withholdings of legal mail during in March of 2007. See id. at 9-12. The third, fourth and fifth narratives encompassed fifteen pages and described various alleged undue interferences with Petitioner's parole hearing in 2003, 2006 and 2007, see id. at 12-26, reflecting on the issues asserted in Petitioner's previous claims including, inter alia, those addressed by Judge Rodriguez and this Court in Petitioner's 2241-II and Bivens-V actions. The sixth narrative was seven pages long; it discussed the events of 2001 to 2004, and asserted that Petitioner's numerous parole hearings were sabotaged, implicating the same claims raised in Petitioner's 2241-II and Bivens-V actions. See id. at 27-33. The seventh (and last) narrative was also of seven pages, and it discussed alleged obstruction of Petitioner's grievance processes. See id. at 33-40. Petitioner concluded his seven narratives with an explanation that prison officials are "slimy-lying" and "blood-sucking," that "the BOP has maintained its statute as the dumping ground for unemployable and an incubator for breeding corruption and nepotism [with] an on-going culture of systemic lies." See id. at 41.

On July 16, 2008, Petitioner submitted an amended complaint in his Bivens-VII action; where he "added four defendants and two [more] issues." See id.., Docket Entry No. 8, at 1. Re-stating his claims in his amended complaint, Petitioner further

elaborated on his previous claims including, _inter alia_, those addressed by Judge Rodriguez and this Court in Petitioner's <u>2241-II</u> and <u>Bivens-V</u> actions.  See <u>generally</u>, <u>id.</u>, Docket Entry No. 8.

In his <u>Bivens-VII</u> action, Petitioner seeks, _inter alia_, "[t]hat the defendants cease and desist all interferences with [his] parole process."  Docket Entry No. 1, at 41; Docket Entry No. 8, at 24.

## B.    <u>2241-III: the Instant Petition</u>

Petitioner's instant submission, pending before the undersigned, consists of a 48-page petition and 110 pages of exhibits.  Same as his <u>Bivens-VII</u> complaint, Petitioner's application presents a series of narratives.

The first narrative is titled "Respondents failed to timely prepare a psychological report for the Parole Commission with a May 1, 1999 due date which effectively prejudiced Petitioner from gaining parole."  See Docket Entry No. 1, at 2.  The narrative covers the events that took place between November 2, 1998, and February 22, 1999, and were presented to Judge Rodriguez in <u>2241-II</u> and to the undersigned in <u>Bivens-V</u>, _i.e._, the alleged delay in preparation of the BOP evaluation, _i.e._, the BOP report, which Petitioner now asserts to be the basis for his unconstitutional denial of parole.  See <u>id.</u>, at 12-16.

The next narrative bears the heading, "As Petitioner

utilized the BOP administrative remedy to decry FCI Ft. Dix
psychology department deceptive tactics, he was retaliatory
[(sic)] transferred to FCI Petersburg, Virginia." See id. at 16.
This narrative continues to elaborate on the alleged delay in
preparation of the BOP evaluation and, in addition, addresses the
issues related to Petitioner's transfer from one BOP facility to
another, see id. at 16-18, i.e., the matter resolved in the
Mandamus-II action, and affirmed by the United States Court of
Appeals for the district of Columbia, as discussed supra.

The third narrative is titled "The [BOP] report . . . is
false, inaccurate, misleading and without supporting facts." See
id. at 18. The narrative discusses the issue, which was at the
core of this Court's Bivens-V and District of Columbia Bivens-VII
matters, namely, Petitioner's disagreement with the medical
opinions contained in the BOP report, which Petitioner reads as
lending support to the Parole Board's decision to deny him
parole. Petitioner's challenges to the BOP report are selective:
he alleges that the BOP report is fully correct as to those
conclusions which could be interpreted as supporting his release
on parole (e.g., Petitioner expressly stresses the correctness of
the BOP report with respect to the finding that "the possibility
of [Petitioner] being the perpetrator of any behavior likely to

harm another is minimal")[17] but maintains that the BOP report is wholly incorrect as to the conclusions supporting the Board's decision to deny him release on parole. See id. at 18-27.

Petitioner's fourth narrative, titled "The [BOP] report was effectively contradicted one year later by a leading professor of forensic psychiatry recognized by the government of more than 30 years," begins with a discussion of how Petitioner's then-counsel retained Dr. Schwartz in 2000 for the purposes of evaluating Petitioner and proceeds with accusations as to alleged obstacles posed by Petitioner's prison officials to that evaluation and to Petitioner's preparation for the following parole proceedings. The former aspect of that discussion, i.e., the retention and credentials of Dr. Schwartz, was presented to this Court in the Bivens-V matter and to the District of Columbia in Bivens-VI matter, while the latter aspect of alleged obstructions is currently before Judge Kugler, as part of the pending Bivens-VII matter. See id. at 27-30.

The narrative concludes with Petitioner's assertion that "the Parole Board . . . used the false, inaccurate and misleading

_____

[17] Petitioner alleges that these favorable statements are correct because they correspond to the psychological evaluation by Dr. Schwartz, which Petitioner defines as "accurate statements" in contrast to unfavorable and, therefore, "inaccurate statements" in the BOP report. See Docket Entry No. 1, at 22. The "accurate statements" cited by Petitioner state that Petitioner's age group of mid-30's persons, as well as Petitioner's ethnicity, render him a particularly low risk for dangerous behavior. See id.

[BOP] report to deny [Petitioner] parole and completely ignored [Dr. Schwartz] who personally examined more than 1,000 murderers." Id. at 30.  These allegations are substantively indistinguishable from those presented in Petitioner's 2241-II, Bivens-V and Bivens-VI actions, and were conclusively rejected by Judge Rodriguez, the undersigned and Judge Huvelle.  Petitioner now seeks to have this same issue adjudicated a fourth time, without disclosing or discussing the previous three court rulings.

The fifth narrative bears a heading that reads "The one-person parole board used the [BOP] false, inaccurate and misleading report  to deny [Petitioner] parole without cause" and states Petitioner's belief that the fact of the Parole Commission's reference to the BOP report without express discussion of Dr. Schwartz' conclusions must be indicative of the Parole Board's ignorance of Dr. Schwartz' report and testimony. See id. at 30-32.  These allegations, same as the ones in Petitioner's fourth narrative, were presented to and addressed in Petitioner's 2241-II, Bivens-V and Bivens-VI actions.  Again, Petitioner seeks a fourth bite of this well-chewed apple.

Starting from his sixth narrative on, the Petition becomes progressively patchy, although it essentially keeps readdressing the matters addressed in 2241-II, Bivens-V and Bivens-VI actions. Specifically, the sixth narrative (titled "Chief psychiatrist

Marcia Baruch's comments regarding the {BOP} report effectively supports Petitioner's release, although inaccurate") simultaneously alleges that: (a) Ms. Baruch's handwritten note indicated her opinion that the BOP report was "positive and in [Petitioner's] favor"; (b) nonetheless, it "is clear [to Petitioner that] the [BOP] report was . . . used to deny [him] parole"; (c) such denial was improperly rendered by Ms. Pinner, a Parole Board examiner, because Ms. Pinner "noted she wasn't a psychiatrist" and, thus, should not have been in the position to disagree with Dr. Schwartz' conclusions favorable to Petitioner's parole prospects.  Id. at 32-33.

The seventh narrative further elaborates on the same. Titled "[The Parole Board] consistently and systematically used the false, inaccurate and misleading [BOP] report . . . adopted by Examiner Kathleen Pinner as gospel to deny [Petitioner] parole in 2004 and 2006, although contradicted by two leading forensic experts," this  seven-page narrative asserts that Ms. Pinner improperly denied Petitioner parole by relying on the BOP report and unduly ignored Petitioner's institutional record and opinions of Dr. Schwartz and another psychiatrist, Dr. Hilkey (who was hired by Petitioner's parents to evaluate Petitioner and recommended Petitioner's parole).  See id. at 33-40.  In addition, Petitioner asserts that his parents and a certain prison official (referred to as "Counselor Martinez") were denied

an opportunity to be present during Petitioner's parole hearing (and, thus, to state during the hearings their arguments in support of his parole). See id. at 34-36. Finally, Petitioner elaborates on: (a) alleged obstacles posed by prison officials as to Dr. Hilkey's evaluation of Petitioner and Petitioner's efforts to invite his parents and Guyanese embassy officials to his parole hearings; (b) alleged confidential information he received prior to the hearing that Ms. Pinner was predisposed to denying him parole and ignoring reports of Drs. Schwartz and Hilkey; and (c) alleged undue actions by unspecified prison officials preventing other unspecified prison officials from acting on the latter's desire to support Petitioner's parole application. See id. at 34-40. Short of the allegations against Ms. Pinner (which substantively mimic those addressed in Petitioner's 2241-II, Bivens-V and Bivens-VI), Petitioner's claims in the seventh narrative are identical to those set forth in his current Bivens-VII action.[18]

The eighth narrative, titled "Petitioner has challenged the [BOP] report through the BOP administrative remedy," addresses the events of 2003 and suggests that the BOP report was prepared in retaliation for Petitioner's use of prison law library, that

---

[18]  A joint reading of Petitioner's instant Petition and Petitioner's Bivens-VII complaint suggest that the person identified as "Counselor Martinez" was a prison official willing to provide statements in favor of Petitioner's parole.

is, in violation of Petitioner's First Amendment rights.  See id. at 40.  The next narrative, ninth in the list, is limited to one paragraph and presents Petitioner's conclusion that the opinions of Drs. Schwartz and Hilkey, plus Petitioner's institutional accomplishments, should have insured Petitioner's release on parole.  See id. at 41.

The tenth narrative is titled "[the] Parole Board has used ex post facto to deny [Petitioner] parole."  See id. at 41.  It asserts, "When [P]etitioner came to prison, he remembers that two/three members would appear at the parole board; however, during his [last] five hearings, a one-person board" was utilized.  Id.  Although Petitioner does not expressly make such an allegation, Petitioner's statements might be interpreted as suggesting that these last five parole hearings violated his right to multi-person parole board which, he believes, was mandated by the 1985 Parole Board Manual.  See id. at 41-43.  The remainder of the narrative is dedicated to discussion of Petitioner's unsuccessful efforts to obtain a copy of that manual.  See id.  Short of the ex post facto aspect, the allegations set forth in the tenth narrative are identical to those addressed in Petitioner's Mandamus-I, 2241-II and Bivens-V actions.  He now raises his ex post facto claim a fourth time.

The last three parts of the Petition are: (1) "Case citation supporting Petitioner's immediate release," a three-page

discussion  alleging that, under the holding of <u>Mickens-Thomas v.</u>
<u>Vaughn</u>, 355 F.2d 294 (3d Cir. 2004), the Parole Board was
obligated to release Petitioner on parole; (2) "Unit Team
[meeting] on October 3, 2007," a discussion of statements made by
Petitioner's Case Manager, who opined during the meeting that
Petitioner's upcoming parole hearing would result in denial of
parole because Ms. Pinner is scheduled to  represent the Parole
Board on that upcoming hearing;[19] and (3) "Conclusion" reciting
Petitioner's opinion that Ms. Pinner was not a proper "Parole
Board" and unduly denied him parole.  <u>Id.</u> at 43-47.

The Petition concludes with the following requests for
relief:

1.   Expungement of the BOP report from Petitioner's prison file;

2.   Mandatory testimony by Drs. Schwartz and Hilkey, as well as
     by Petitioner's parents and Mr. Martinez, at Petitioner's
     next parole hearing;

3.   Presence of two or three Parole Board members (rather than
     one) during Petitioner's next parole hearing;

4.   Exclusion of Ms. Pinner from the Parole Board presiding over
     Petitioner's next parole hearing;

5.   Production of a copy of 1985 Parole Board Manual to

_____

    [19]  Allegedly, Petitioner's Case Manager "stated [that]
Petitioner should be less litigious and Petitioner [responded
that,] as a minority[,] he has to litigate to be heard, as no one
is or has been taking time to review [his] records."  Pet. at 46.

Petitioner;

6.  Elimination of all references to Petitioner's frictions with correctional officers (as well as references to all ensuing grievances) from the BOP report, since these references violated Petitioner's First Amendment rights;[20]

7.  The holding of an evidentiary hearing, seemingly in lieu of Petitioner's next parole hearing, to determine whether Petitioner should be released on parole; and

8.  This Court's detection of such statutes and/or case law that would provide a basis allowing the Petition to proceed past the <u>sua</u> <u>sponte</u> dismissal stage. <u>See</u> <u>id.</u> at 47-48.

## C.   <u>Supplement to the Instant Petition</u>

The Supplement to the Petition is an eight-page document consisting of two sub-parts. The first one asserts that the Parole Board abused its discretion in denying Petitioner's parole during an unspecified parole hearing. The argument: (a) is based on a number of cases outside this Circuit, and (b) asserts that, in Petitioner's case, the BOP report must be deemed unreliable evidence in light of Drs. Schwartz and Hilkey's opinions that Petitioner should be released on parole. <u>See</u> Docket Entry No. 3,

---

[20]  In light of Petitioner's request for *complete* expungement of the BOP report, this Court is not entirely clear as to whether the request for *selective* expungement of these references within the BOP report (which, allegedly, violated Petitioner's First Amendment rights) is an alternative relief that Petitioner seeks.

at 1-6.  The second subpart asserts that, in light of Drs. Schwartz and Hilkey's opinions that Petitioner should be released on parole, the BOP report should be deemed not "objective" and, therefore, the Parole Board's reliance on the BOP report should be deemed a "vindictive" violation of Petitioner's due process rights.  See id. at 6-7.  The Supplement concludes with Petitioner's request to reverse an unspecified Parole Board's decision to deny Petitioner parole.  See id. at 7.

### D.  Joint Reading of the Petition and Supplement

A joint reading of 164 pages of the Petition, exhibits accompanying the Petition and the Supplement indicates the presence of three groups of claims resembling, in their nature either: (1) a procedural motion; or (2) a civil rights complaint under Bivens; or (3) a habeas corpus petition under § 2241.  As the following discussion explains, this Court lacks jurisdiction under § 2241 over the claims in the nature of a procedural motion or those that could be raised only in a civil right complaint. Consequently, Petitioner's allegations will be dismissed for that reason and, in addition, because many, if not all, of these claims are duplicative of those previously rejected by this and other courts.  However, to the extent that any Bivens claim is not barred by res judicata, the dismissal of that claim is without prejudice to the presentation of that claim in a separate

new _Bivens_ complaint.[21]

The allegations cognizable under § 2241 are of two types:
(1) those, which are expressly stated but fail to allege a
violation of federal law; and (2) those that might be implied but
not expressly stated.  This Court will dismiss the latter group
of allegations, but Petitioner will be allowed to amend his
Petition if he desires to attempt to articulate his potentially
implied claims under Section 2241, provided that Petitioner
executes such amendment in accordance with the below-detailed
habeas requirements.

### E.   Post-Supplement Submissions In This Action

Following his filing of the Supplement, Petitioner made
three more filings in this matter addressed to this Court.[22]  The
first of these three filings was received by the Clerk on April
23, 2008; it was Petitioner's motion for appointment of _pro_ _bono_

---

[21]  Any such new Bivens complaint must comply with the
commands of Rule 8 of the Federal Rules of Civil Procedure, which
requires both a short, plaint statement of the court's basis for
jurisdiction and a short, plain statement of the claim and the
relief requested, and a demonstration that the Bivens claim is
"new," that is, not previously or currently presented in any
complaint or petition addressed on merits by any federal court.
Any such new Bivens complaint should not duplicate or rehash the
claims already attempted to be set forth in the Bivens-VII action
presently pending before Judge Kugler.

[22]  In addition, Petitioner filed a letter addressed to the
Chief Judge Garrett E. Brown.  See Docket Entry No. 4.

counsel.[23]  See Docket Entry No. 7.  The second filing, received

by the Clerk on June 3, 2008, was titled "Petitioner's Request

for an Order to Show Cause" ("OTSC-I").  See Docket Entry No. 8.

The OTSC-I requested appointment of Mr. David E. Schafer, an

Assistant Federal Public Defender ("Schafer"), as Petitioner's

counsel in this matter.  See id.  Petitioner clarified that he

selected Schafer as the counsel of his choice because "Schafer

has a substantial amount of experience dealing with the Parole

Commission."[24]  Finally the Clerk received a letter from

---

[23]

> [T]here is no pro bono counsel in habeas cases[.
> However, the] Court has discretion to appoint a federal
> public defender or a CJA attorney to represent a . . .
> habeas petitioner when the petitioner is financially
> eligible for CJA appointment *and* the appointment of
> counsel is in the interest of justice.  See 28 U.S.C. §
> 2254(h); 18 U.S.C. § 3006A(a)(2)(B).  . . .  In making
> its discretionary determination, the Court shall
> consider various factors, including: (a) complexity of
> issues; (b) whether factual investigation is needed;
> (c) whether issues presented are straightforward and
> capable of resolution on the record; and (d) whether
> petitioner is capable of presenting his claims,
> understanding the issues, and meeting the court's
> procedural requirements. See Reese, 946 F.2d at 263-4.

Salaam v. Brown, 04-1617 (DMC), Docket Entry No. 29, at 2-4.
Here, the issues presented by Petitioner are not complex
(although Petitioner's submissions continually confuse and
conflate them), the pertinent facts are extensively detailed
in multitude of lengthy exhibits, and Petitioner's well-
documented ability to produce voluminous legal submissions
in this and other matters suggests that he is capable of not
merely understanding but also of diligently presenting the
issues.

[24]  Petitioner's logic is not entirely clear to this Court,
since the instant matter is not an administrative parole hearing.

Petitioner addressed to this Court ("OTSC-II").  See Docket Entry
No. 9.  The OTSC-II consisted of two pages, one typed, one
handwritten.  See id.  The typed portion of the OTSC-II re-
requesting Schafer's appointment and, in addition, asserted that
the case law cited by Petitioner "completely supported
[Petitioner's] release and legion [sic] on [Petitioner's]
behalf."  Id. at 1.  The typed portion also notified the Court of
Petitioner's disappointment with the fact that the original
Petition, filed at the end of October of 2007, "has not been
served."  Id.  Continuing in the same vein, the handwritten
portion of the OTSC-II demanded prompt service of the Petition
upon Respondent on the grounds that Petitioner's parole hearing
(originally expected to take place on June 2008) was re-scheduled
for May 5, 2008.  See id. at 2.  The demand was accompanied by
Petitioner's observation that the May 2008 parole hearing would
necessarily violate his federal rights.[25]  See id. at 2.

_____

Rather, this action is a habeas court proceeding not involving
any "dealing with the Parole Commission."  See Docket Entry No.
8, at 1.  Petitioner's additional clarification that Schafer
should be appointed to represent Petitioner because Schafer would
be able to obtain transcription of Petitioner's unspecified
parole hearing (to verify Petitioner's assertions as to the
events that took place during that unspecified hearing) does not
cure the aforesaid illogic, since this Court's assessment of the
Petition and the Supplement, at the instant juncture, is already
based on a presumption that Petitioner's factual assertions as to
the events of his parole hearings are true.

[25]  Since an order directing service of a litigant's pleading
cannot operate as that resolving a legal action in favor of the
litigant, it appears that Petitioner request as to the issuance

Bewilderingly, the OTSC-II predicting violations of Petitioner's rights during May 5, 2008, hearing, was mailed on June 23, 2008 (that is, a month and a half *after* the hearing), and the typed portion bore the date of June 23, 2008, while the handwritten one was dated as of March 26, 2008. <u>See</u> <u>id.</u> at 1-3.

## III. DISCUSSION

### A. <u>The Nature of Habeas Action and Pleading Requirements</u>

28 U.S.C. §2241 provides, in pertinent parts:

> Writs of <u>habeas</u> <u>corpus</u> may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . . . The writ of <u>habeas</u> <u>corpus</u> shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or the laws or treaties of the United States.

28 U.S.C. §2241 (a) and (c)(3).

Although <u>pro</u> <u>se</u> applications are construed liberally and with a measure of tolerance, <u>see</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989), "[h]abeas <u>corpus</u> petitions must meet heightened

---

of an order directing service upon Respondent was made with the hope of causing an in terrorem effect. However, if so, such service would be indeed unwarranted. See Bell Atl. Corp. v. Twombly, 127 S. Ct. At 1966 (explaining that a litigant with a largely groundless claim should not be allowed to take up the time of a number of other people, since the litigant's right to do so might cause an unwarranted in terrorem effect) (relying on Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005), relying, in turn, on Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)).

pleading requirements." <u>McFarland v. Scott</u>, 512 U.S. 849, 856

(1994). "Federal courts are authorized to dismiss summarily any

<u>habeas</u> petition that appears legally insufficient on its face."[26]

<u>McFarland</u>, 512 U.S. at 856; <u>Siers v. Ryan</u>, 773 F.2d 37, 45 (3d

Cir. 1985), <u>cert. denied</u>, 490 U.S. 1025 (1989); <u>see also</u> <u>Mayle v.</u>

<u>Felix</u>, 545 U.S. 644 (2005).

Federal law provides two avenues of relief to prisoners: a

petition for <u>habeas</u> <u>corpus</u> and a civil rights complaint. <u>See</u>

<u>Muhammad v. Close</u>, 540 U.S. 749, 750 (2004). "Challenges to the

validity of any confinement or to particulars *affecting its*

*duration* are the province of <u>habeas</u> <u>corpus</u> . . . [while] requests

for relief turning on *circumstances of confinement* [fall within

the realm of] a § 1983 action."[27]  <u>Id.</u> (emphasis supplied). As §

---

[26] Therefore, Habeas Rule 4 requires the Court to examine a
petition prior to ordering an answer and to summarily dismiss the
petition "[i]f it plainly appears from the petition and any
attached exhibits that the petitioner is not entitled to relief."
<u>See</u> 28 U.S.C. § 2254 Rule 4, applicable to § 2241 petitions
through Habeas Rule 1(b).  Moreover, the Habeas Rules obligate
the petitioner to "to specify all the grounds for relief, state
the facts supporting each ground," and to prepare a "petition
[which does] substantially follow either the [pre-printed <u>habeas</u>
petition] form [distributed by the Clerk] or a form prescribed by
a local district-court rule".  <u>See</u> 28 U.S.C. § 2254 Rule 2(c),
applicable to § 2241 petitions through Habeas Rule 1(b).

[27] In a series of cases beginning with Preiser v. Rodriguez,
411 U.S. 475 (1973), the Supreme Court analyzed the intersection
of civil rights and habeas corpus.  In Preiser, state prisoners
who had been deprived of good-conduct-time credits by the New
York State Department of Correctional Services as a result of
disciplinary proceedings brought a § 1983 action seeking
injunctive relief to compel restoration of the credits, which
would have resulted in their immediate or speedier release.  <u>See</u>

39

1983 action applies only to state actions, it is not available to federal prisoners; the federal counterpart is an action under _Bivens_ alleging deprivation of a constitutional right.  _See_ _Brown v. Philip Morris, Inc._, 250 F.3d 789, 801 (3d Cir. 2001) ("A _Bivens_ action . . . is the federal equivalent of the § 1983 cause of action against state actors, [it] will lie where the defendant has violated the plaintiff's rights under color of federal law").

The Court of Appeals for the Third Circuit explained the distinction between the availability of civil rights relief and the availability of _habeas_ relief as follows:

> [W]henever the challenge ultimately attacks the "core of _habeas_" - the validity of the continued conviction or the fact or length of the sentence - a challenge, however denominated and regardless of the relief sought, must be brought by way of a _habeas_ _corpus_ petition.  Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

_Leamer v. Fauver_, 288 F.3d 532, 542 (3d Cir. 2002).

Therefore, a prisoner is entitled to a writ of _habeas_ _corpus_ only if he "seek[s] to invalidate the duration of [his] confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination

_____

_id._ at 476.  The prisoners did not seek compensatory damages for the loss of their credits.  _See_ _id._ at 494.  Assessing the prisoners' challenge, the Supreme Court held that a prisoner must bring a suit for equitable relief that, effectively, challenges "the fact or duration of confinement" as a _habeas_ _corpus_ petition.  _See_ _id._ at 500.

that necessarily implies the unlawfulness of the [government's] custody." See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005). In contrast, if a judgment in the prisoner's favor would not affect the fact or duration of the prisoner's incarceration, habeas relief is unavailable and a civil complaint is the appropriate form of remedy.[28] See, e.g., Ganim v. Federal Bureau of Prisons, 235 Fed. App. 882 (3d Cir. 2007) (holding that district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to his transfer between federal prisons); Bronson v. Demming, 56 Fed. App. 551, 553-54 (3d Cir. 2002) (habeas relief was

─────────────────

[28] Unlike habeas actions, civil rights cases require a filing fee, either as a prepayment or a series of installment payments. See 28 U.S.C. § 1915. The filing fee for a habeas petition is $ 5.00, and inmates filing a habeas petition who are granted in forma pauperis status do not have to pay the filing fee. See Santana v. United States, 98 F. 3d 752 (3d Cir. 1996) (filing fee payment requirements of PLRA do not apply to in forma pauperis habeas corpus petitions and appeals). In contrast, the filing fee of a civil rights complaint is $ 350.00. Inmates filing a civil rights complaint who proceed in forma pauperis are required to pay the entire filing fee in monthly installments which are deducted from the prison account. See 28 U.S.C. § 1915(b). In addition, if a prisoner has, on three or more occasions while incarcerated, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from immune defendants, then the prisoner may not bring another action in forma pauperis unless he or she is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g). Because of these differences, the court generally do not sua sponte re-characterize a habeas pleading as a civil rights complaint. Moreover, here such re-characterization is wholly unavailable, since: (a) Petitioner is barred from filing in forma pauperis by the above-discussed "three strikes" rule, see Toolasprashad v. Williams, 07-5860 (RBK), Docket Entry No. 2; and (b) his Petition does not indicate that he is in imminent danger of serious physical injury.

unavailable to inmate seeking release from disciplinary
segregation to general population, and district court properly
dismissed _habeas_ petition without prejudice to any right to
assert claims in properly filed civil rights complaint).
Recently, the Court of Appeals emphasized that, where an inmate
files an application

> alleging that [the Parole Board officials] violated his
> due process rights . . . at his parole eligibility
> hearings by relying on the fabricated evidence in
> denying his parole, [the application does not present a
> "core" _habeas_ challenge because] the Parole Review
> Board still could have denied him parole at his review
> hearing [relying on non-falsified evidence, since] the
> Parole Review Board bases its decision to grant or deny
> parole on numerous factors . . . .

_Fain v. Morgan_, 2007 U.S. App. LEXIS 27548, at *2-3 (3d Cir. Nov.
28, 2007). Accordingly, the _Fain_ court concluded that, where the
inmate's motion for reconsideration requests a curative parole
hearing, the inmate's entire application should be read as a
civil rights complaint rather than a petition stating a _habeas_
challenge.[29] _See_ _id._ at *3.


### B.    Claims Not Cognizable Under § 2241

Three of Petitioner's claims for relief fall entirely
outside this Court's § 2241 jurisdiction. Specifically,

_____

[29] Notably, the Court of Appeals reached this conclusion,
even though the inmate's original application in _Fain_ sought no
curative hearing and contained numerous allegations that the
parole board denied the inmate "required release." _See_ _Fain v.
Morgan_, 06-4404 (JAP), Docket Entry No. 1, at 5-8, 10.

Petitioner's request for detection of such statutes and/or case law that would provide a basis allowing the Petition to proceed past the <u>sua</u> <u>sponte</u> dismissal stage does not present either a <u>habeas</u> challenge, or a <u>Bivens</u> challenge, or a cognizable challenge of any kind.[30]  Similarly, Petitioner's request for production of the 1985 Parole Board Manual has no bearing on either the fact or duration of Petitioner's confinement and, thus, falls outside § 2241 jurisdiction.[31]  <u>See</u>, <u>e.g.</u>, <u>Ganim v. Federal Bureau of Prisons</u>, 235 Fed. App. 882.  Finally, Petitioner's request for a parole eligibility hearing by this Court (which Petitioner defines as an "evidentiary hearing") is also a claim outside the scope of § 2241.[32]

---

[30] The standard of review (applicable to <u>habeas</u> petitions and discussed in the preceding Section of this Opinion) is a matter of law not subject to this Court's discretion.

[31] Moreover, in light of the fact that Petitioner twice presented his request for production of the Manual to different courts and had this claim twice denied on merits, once in his <u>Mandamus-I</u> action and once in his 2241-II matter, Petitioner's current "re-challenge" (a) is barred by the doctrine of res judicata, and (2) presents a successive petition not subject to this Court's review.  <u>See</u> <u>Sanders v. United States</u>, 373 U.S. 1 at 15-17 (1963) (A "successive petition" raises grounds identical to those raised and rejected on the merits on a prior petition).

[32] This Court cannot hold an evidentiary hearing *in lieu* of Petitioner's parole hearing since such action would unduly usurp the mandate of the Parole Board and violate core separation-of-power postulates.  See, e.g., Billiterri v. United States Board of Parole, 541 F.2d 938, 943-44 (2d Cir. 1976).

> there is no precedent for the district court's action in holding its own parole hearing on which it predicated its order to the Parole Board to release [the petitioner] on

Petitioner's <u>Bivens</u>-like claims for relief expressly stated in his Petition could be roughly subdivided into two categories: (1) claims seeking expungement of the BOP report from Petitioner's file or, in the alternative, expungement of what Petitioner calls "chilling speech violations," <u>i.e.</u>, references to Petitioner's frictions with the correctional officers and Petitioner's ensuing grievances; and (2) claims seeking injunctive relief in the form of a curative (or future) hearing

---

parole. As a statutory court, the United States District Court had no power to conduct such a proceeding and issue such an order. Congress has vested in the sound discretion of the Parole Board the sole power to grant or deny parole. [See] 18 U.S.C. § 4203[;] Buchanan v. Clark, 446 F.2d 1379, 1380 (5th Cir.), cert. denied, 404 U.S. 979 (1971); Tarlton v. Clark, 441 F.2d 384, 385 (5th Cir.), cert. denied, 403 U.S. 934 (1971); . . . United States v. Frederick, 405 F.2d 129 (3rd Cir. 1968). "The courts are without power to grant a parole or to judicially determine eligibility for parole. Furthermore, it is not the function of the courts to review the discretion of the Board in the denial of applications for parole, or to repass on the credibility of reports and information received by the Board in making its determinations." Brest v. Ciccone, 371 F.2d 981, 982-83 (8th Cir. 1967). . . . The only remedy the court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of non-compliance, the court can . . . order the prisoner discharged from custody.

Id.; accord Furnari v. United States Parole Comm'n, 2008 U.S. App. LEXIS 14512, at *6-8 (3d Cir. Pa. July 9, 2008) (the remedy for improper parole hearing is a conditional order granting the petition and directing a curative statement of reasons for denial of parole or a de novo parole hearing by the Parole Commission); Mickens-Thomas, 355 F.2d 294 (finding that the remedy of release on parole was proper where the court granted the petitioner conditional relief of habeas corpus and remanded his matter to the Board for a de novo hearing, but the Board failed to comply).

that would exclude the allegedly biased examiner Ms. Pinner, include two or three member Parole Board, as well as oral testimonies by Drs. Schwartz and Hilkey, Petitioner's parents and Mr. Martinez. Neither category of these claims, however, presents a true _habeas_ challenge. Moreover, even if construed as § 2241 challenges, these claims do not merit _habeas_ relief, for the reasons next discussed.

### 1. Expungement Claims

#### a. *Complete Expungement of the BOP Report*

As previously explained to Petitioner in rejecting the _Bivens-V_ complaint, the only case in this Circuit on the issue of expungement is _Williams v. Federal Bureau of Prisons_, 85 Fed. App. 299 (3d Cir. 2004), a case decided before the Supreme Court's ruling in _Wilkinson v. Dotson_, 544 U.S. 74 (2005).

In _Williams_, the inmate-petitioner filed a _pro se_ § 2241 habeas petition claiming that federal officials had improperly refused to delete false information contained in his prison file. _See_ _id._ at 303. Examining that petition, the magistrate judge employed the rationale later articulated by the Supreme Court in _Wilkinson_ and "concluded that, since [the inmate's] _habeas_ claims did not challenge the length of his confinement, the _habeas_ petition [had to] be construed as a _Bivens_ action." _Id._ The district court adopted the magistrate judge's conclusion and,

45

eventually, dismissed the petition.  See id.  The inmate appealed.

Addressing the issue, the Court of Appeals observed as follows:

> We have never had to decide whether to endorse the right of expungement announced in Paine v. Baker, 595 F.2d 197 (4th Cir. 1979), and other Circuit Courts of Appeals have expressly questioned its precedential value. [See] Johnson v. Rodriguez, 110 F.3d 299, 308-09 n. 13 (5th Cir. 1997).  Nevertheless, [the inmate in Williams] argues that his . . . prison file expungement claim are meritorious under Paine v. Baker.  There, the Court of Appeals for the Fourth Circuit announced that, in limited circumstances, state prisoners have a federal due process right to have "prejudicial erroneous information expunged from their prison files."  [See Paine,] 595 F.2d at 202.  The court held:
>
>> In certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied upon to a constitutionally significant degree.
>
> Id. at 201.  [The inmate now] argues that he can assert Paine v. Baker expungement claims in a § 2241 habeas petition.  Even if we assume arguendo that [the inmate] can assert a Paine v. Baker expungement claim in a § 2241 habeas petition, it is nevertheless clear that he is not entitled to relief [of expungement of] his prison file [where the information on file is an opinion implicating no liberty interests].

Williams, 85 Fed. App. at 303.

The Court of Appeals' use of the "arguendo" language, read in light of the Supreme Court's decision in Wilkinson (as well as in light of the Williams magistrate judge's conclusion that the Williams petition posed a purely-Bivens claim) indicates that an

46

expungement claim falls outside § 2241 jurisdiction and has to be raised in a separate <u>Bivens</u> action. Moreover, even if this Court is to overlook this threshold shortcoming, it was already explained to Petitioner in <u>Bivens-V</u> that he

> fails to state a claim even under the rule announced in <u>Paine</u>. Under <u>Paine</u>, a prisoner must allege three elements in order to state a due process claim for expungement: (1) that particular information exists in his file, (2) that the information in his file is false, and (3) that the information is relied on to a constitutionally significant degree. [<u>See</u>] 595 F.2d at 201. With
> respect to the second element, the <u>Paine</u> court stated,
>
> > [I]t is not sufficient that the inmate disputes evaluations and opinions regarding him. [<u>See</u>] <u>Williams v. Ward</u>, 556 F.2d 1143 (2d Cir.), <u>cert. dismissed</u>, 434 U.S. 944 (1977) (inmate disagreed with psychiatric evaluations contained in file). . . . The federal courts will not oversee the discretionary decisions of prison administrators and second-guess their evaluations. [<u>See</u> <u>id.</u>] at 201.
>
> As [Petitioner] presents the type of claim explicitly excluded by the <u>Paine</u> court, a challenge to a psychological evaluation, he does not state a due process claim for expungement of records contained in his BOP or parole file.

<u>Bivens-V</u>, Civil Action No. 04-3219, Docket Entry No. 10, at 9-11.

Finally, in light of the facts that: (a) Petitioner raised the same claims in his <u>2241-II</u> and <u>Bivens-V</u> actions; (b) Judge Rodriguez ruled, in the <u>2241-II</u> action, that Petitioner's allegations do not merit <u>habeas</u> relief; and (c) this Court expressly clarified in the <u>Bivens-V</u> opinion that Petitioner's expungement claim is without merit under the holdings of

<u>Williams</u>, 85 Fed. App. at 303, and <u>Paine v. Baker</u>, 595 F.2d 197,
the part of the Petition containing Petitioner's recitation of
the expungement allegations twice dismissed presents a meritless
and, in addition, non-reviewable "successive petition." <u>See</u>
<u>Sanders</u>, 373 U.S. at 15-17.

**b.** ***Partial Expungement***

Petitioner's partial expungement claim is fleshed out less
than that seeking complete expungement.  The relief Petitioner
expressly seeks reads as follows: "Strike from the [BOP] report
the chilling speech violations" and refers the reader to
paragraphs 21 to 24 of his Petition.  <u>See</u> Pet. at 48.  These four
paragraphs provide the following information and allegations:

In his Paragraph 21, Petitioner quotes the following
statements from the BOP report:

> According to information received from the Unit Team at
> FCI Petersburd, [Petitioner] verbally confronted
> members of his Unit Team and threatened to file a
> complaint because the team did not have all of the
> documentation he deemed necessary in his [BOP] file.
> According to his case manager, [Petitioner] questioned
> her understanding of BOP policy regarding being seen by
> his unit team.  [Petitioner] insisted that he was not
> required to meet with team members as a matter of
> policy.

Pet. at 19.  After so quoting, Petitioner asserts that the
aforesaid statements from the BOP report are both incorrect and
prejudicial, even though Petitioner's other allegations in his
Petition (containing his recollection of the pertinent events)

48

indicate that the statements in the BOP report are factually correct.[33]  _See id._

In his Paragraph 22, Petitioner continues to elaborate on the above-quoted statements in his BOP report[34] and alleges that the fact of prison officials disclosing the arguments they had with Petitioner to Dr. Berry, the preparer of the BOP report, is prejudicial because it "prevent[ed] . . . petitioner from speaking - chilling speech."  Petitioner, thus, concludes that the facts related by prison officials to Dr. Berry should be stricken from the BOP report.  _See id._ at 20.

In his Paragraph 23, Petitioner asserts that if Dr. Berry's statements (which Petitioner challenges as unfavorable to his parole prospects) are not stricken, the Court should direct the

---

[33]  According to Petitioner: (a) he appeared before his team to explain to the team members that they failed to follow a certain BOP policy by providing him with an unduly short notice about the meeting; and (b) he expressed his disapproval of the fact that his prison file did not contain certain documents that he wished to be in the file.  _See_ Pet. at 19.  Since the statements in the BOP report indicate that Petitioner did make an appearance during which he argued about the BOP policy and lack of certain documents in his prison file, the statements in the BOP report appear to be accurate.

[34]  Specifically, Petitioner asserts that: (a) "he did not question[] the case manager about [BOP] policy [but rather only] commented" that the policy was not followed; and (b) "Petitioner did not say he did not have to meet with the team [but rather] he indicated that the team [meeting] should be postponed" and reminded the team that he "may 'waive' team appearance."  Pet. at 20.  Petitioner's assertions, however, appear to be in complete coherence with the facts included by Dr. Berry in Petitioner's BOP report, _compare_ Pet. at 19 to Pet. at 20, and Petitioner's disagreement appears to be stylistic rather than factual.

Parole Board to interpret these unfavorable statements as favorable because Dr. Berry did not include in these statements a conclusion that Petitioner was aggressive.  See id.

In the last paragraph, i.e., Paragraph 24, Petitioner asserts that, during or prior to the year of 2000, Dr. Pugh (who supervised Dr. Berry's preparation of the BOP report and signed it) was interfering with Petitioner's visits to law library, where Petitioner was preparing his application for post-conviction relief, studying various BOP policies and writing letters for illiterate inmates.[35]  Petitioner concludes this Paragraph with the statement that Dr. Pugh was "effectively . . . 'chilling speech' suppressing [Petitioner's] First [A]mendment rights."  Id. at 21.

Liberally construed, Petitioner's Paragraph 24 indicates Petitioner's desire to assert a time-barred First Amendment access-to-court civil rights claim, while his Paragraph 22 statements might be interpreted as a time-barred First Amendment retaliation claim.[36]  However, these First Amendment Bivens-like

---

[35]  Petitioner asserts that he did not file his post-conviction relief applications because of Dr. Pugh's actions. The factual aspect of this allegation is not entirely clear to this Court, since Petitioner filed three § 2255 motions challenging his conviction, and then appealed denial of these motions in his 2255-I, 2255-II and 2255-III actions dismissed on merits by the Court of Appeals for the Fourth Circuit.

[36]  Even under the rules of liberal construction, this Court cannot read Petitioner's Paragraphs 21 and 23 statements as asserting any type of cognizable legal claim.

50

allegations cannot be raised under Section 2241: this Court lacks § 2241 jurisdiction to address these claims.  See <u>Ganim</u>, 235 Fed. App. 882; <u>Bronson v. Demming</u>, 56 Fed. App. at 553-54.  Moreover, since Petitioner's assertions in Paragraphs 21 to 23 verify the factual correctness of Dr. Berry's statements in Petitioner's BOP report, they do not provide basis for expungement regardless of whether or not the jurisdictional basis is present.  See <u>Paine</u>, 595 F.2d at 201 (a prisoner must allege that the information in his file is *false* in order to state a due process claim for expungement).

## 2.    Curative/Future Parole Hearing Claims

The second category of Petitioner's non-motion-like claims for relief expressly stated in his Petition appear to challenge Petitioner's upcoming parole hearing to be held in the summer of 2008.  See Pet. at 46 ("[P]etitioner shouldn't expect parole [because] it is obviously clear that once again decisions have already been made adverse to him -- and it appears as the outcome of his June 2008 parole hearing has been decided to deny parole").  Specifically, Petitioner seeks to ensure that: (1) Drs. Schwartz and Hilkey, as well as Petitioner's parents and Mr. Martinez, will be allowed to testify in person at this upcoming parole hearing; (2) the Parole Board will consist of two or three examiners rather than one; and (3) Ms. Pinner will not be one of

those examiners.  Petitioner asserts that,  unless these

conditions are met, his upcoming parole hearing will violate his

constitutional rights.  <u>See</u> Pet. at 47.

It is self-evident that Petitioner's allegations as to his

*future* parole hearing are speculative and do not warrant <u>habeas</u>

relief.  <u>See</u> 28 U.S.C. §2241(c)(3) (the language of § 2241 is set

forth in present rather than in future terms, <u>i.e.,</u> it reads:

"The writ of habeas corpus shall not extend to a prisoner unless

. . . he *is* [rather than *will be*] in custody in violation of the

Constitution or the laws or treaties of the United States")

(emphasis supplied); <u>see also</u> <u>Phifer v. Clark</u>, 115 F.3d 496, 1997

U.S. App. LEXIS 13007 (7th Cir. 1997) (dismissing the petition

where the petitioner's "suggested adverse consequences [are]

speculative.  Each depends upon possible discretionary actions

that may or may not affect future parole decisions").

Therefore, this Court gives Petitioner's application the

benefit of the doubt and construes his allegations as stating

that: (a) a certain unspecified Petitioner's parole hearing was

procedurally deficient;[37] and (b) Petitioner seeks injunctive

---

[37]  Since Petitioner's ten-narratives-plus-five-memoranda
submission constituting his Petition and Supplement, as well as
his 110 page appendix, detail events during all Petitioner's
parole hearings and, in addition, numerous events that took place
in between these hearings, this Court has no way of determining
which particular parole hearing(s) petitioner believes to be
procedurally deficient.  Similarly, this Court has no way of
establishing with absolute certainty whether Petitioner is "re-
challenging" procedural aspects of those parole hearing(s) that

relief in the form of an order directing that that future parole hearing will be proper.[38]  Yet, if so, Petitioner's allegations must be brought under <u>Bivens</u> (mirroring those addressed by the Supreme Court in <u>Wilkinson</u>) rather than as a <u>habeas</u> action.

This Court, however, will assume, at the instant juncture, that Petitioner's allegations could be brought under § 2241 for the following reasons.

The distinction between <u>habeas</u> and civil rights actions dating back to <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973), is based on the Supreme Court's rationale that a prisoner cannot evade the requirements of the <u>habeas</u> mandate by presenting his <u>habeas</u> challenges in the wrap of a civil rights complaint.  <u>See</u>

―――――――――――――――――

were already examined by this or any other court during Petitioner's previous litigations.

    [38]  Indeed, if Petitioner's <u>Wilkinson</u> parole hearing is: (a) conducted in the presence of Petitioner's parents, and (b) by two parole examiners, none of whom is Ms. Pinner, it does not guarantee that Petitioner would be released on parole or have his prison term shortened.  <u>See</u> <u>Fain v. Morgan</u>, 2007 U.S. App. LEXIS 27548, at *2-3 (3d Cir. N.J. Nov. 28, 2007)  (allegations that the Parole Board violated the inmate's due process rights at his parole eligibility hearings by relying on the fabricated evidence do not present a <u>habeas</u> challenge because "the Parole Review Board still could have denied him parole at his review hearing [relying on non-falsified evidence, since] the Parole Review Board bases its decision to grant or deny parole on numerous factors"); <u>compare</u> <u>Preiser</u>, 411 U.S. 475 (challenges to calculation of good-conduct-time *credits* necessarily affect "the fact or duration of confinement" and, thus, might be raised in a <u>habeas corpus</u> petition); <u>Hunterson v. DiSabato</u>, 244 Fed. App. 455, 458 (3d Cir. 2007) (An action alleging that a parole *revocation* was constitutionally infirm affects, by definition, "the fact or duration of confinement") (citing <u>Williams v. Consovoy</u>, 453 F.3d 173, 177 (3d Cir. 2006)).

Preiser, 411 U.S. at 489-490 ("It would wholly frustrate explicit congressional intent to hold that [prisoners] could evade [habeas] requirement[s] by the simple expedient of putting a different label on their pleadings"). The same rationale applies vice-versa: a prisoner cannot evade the requirements of the PLRA by presenting his civil rights challenges in the wrap of a habeas application. See Ganim, 235 Fed. App. 882; Demming, 56 Fed. App. 551. Just as the Court of Appeals' treatment of the claims in Ganim, 235 Fed. App. 882, and Demming, 56 Fed. App. 551, the Supreme Court's language in Wilkinson stating that "the validly sentenced prisoner who shows only that the [government] made a procedural error in denying discretionary parole . . . cannot obtain habeas relief--conditional or otherwise," 125 S. Ct. at 1251 (Scalia, J., concurring), suggests that a Wilkinson challenge to parole review procedures falls outside the scope of habeas mandate and must be brought in a civil rights complaint. Such conclusion appears to be in accord with the PLRA since "[i]t would wholly frustrate explicit congressional intent to hold that [prisoners] could evade [the PLRA] requirement[s] by . . . putting a different label on their pleadings." Preiser, 411 U.S. at 489-490. Moreover, the case at hand is a glaring example of why such conclusion is the only rational application of the PLRA; Petitioner (precluded by the "three strikes" rule from obtaining in forma pauperis status) should not be allowed to evade the

filing fee requirement by lumping his civil rights claims into a stew of other allegations containing traces of habeas flavorings.

However, at the instant juncture, the Court of Appeals for the Third Circuit has not held that a Wilkinson challenge necessarily must--rather than merely may--be raised in a civil rights complaint. While the Court of Appeals' recent non-precedential decisions so suggest, see Aruanno v. New Jersey, 215 Fed. App. 157 (3d Cir. 2007) (holding that, where an inmate seeks injunctive relief challenging to the procedures used during his civil commitment hearing, such challenge presents a civil rights claim); Fain v. Morgan, 2007 U.S. App. LEXIS 27548 (making the same finding as to parole review hearing), a dictum by the Court of Appeals in Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001) (a case addressing distinctions between two jurisdictional bases for habeas applications, Sections 2254 and 2241, rather than distinctions underlying habeas and civil rights claims), states that "federal prisoners challenging some aspect of the execution of their sentence, such as denial of parole, may proceed under Section 2241." This dictum language indicates that a Wilkinson challenge can be entertained under § 2241. Yet, this language provides the Court with uncertain guidance in light of the Cody court's observation that "[i]t is a well-established canon of statutory construction that when two statutes cover the same situation, the more specific statute takes precedence over the

more general one." <u>Id.</u> at 484 (citing, <u>inter alia</u>, <u>Preiser</u>, 411 U.S. at 488-89). In tension with the above-quoted <u>dictum</u> language, this rationale suggests that the requirements of the PLRA, a statutory provision narrower than the mandate of § 2241, should preclude this Court from entertaining a <u>Wilkinson</u> challenge brought by an inmate who has three strikes,[39] <u>see</u> 28 U.S.C. § 1915(g), under § 2241.

Consequently, at the instant juncture, the law in this Circuit does not mandate the conclusion that <u>habeas</u> and civil rights modes are mutually exclusive in all actions. Rather, the current legal regime suggests that civil rights and <u>habeas</u> may provide "overlapping" remedies in certain actions which lie at the intersection of challenges to an "execution of the sentence" and those to "conditions of confinement." Since it appears that a <u>Wilkinson</u> challenge is one of such actions allowing the inmate an option of choosing between a <u>habeas</u> and civil rights modes, this Court will examine Petitioner's <u>Bivens</u>-like allegations on the merits. These allegations are subdivided into three groups: (1) those related to parole hearing by one rather than two examiners; (2) those related to denial of attendance of

---

[39] Furthermore, unlike <u>Bivens</u> claims, a § 2241 claim is not subject to and statute of limitations requirement; at most, a § 2241 claim could be subject to the defense of laches. Consequently, a prisoner may, as Petitioner here, challenge procedural sufficiency of an early parole review hearing many times superseded by later parole reviews which could have been procedurally valid.

witnesses; and (3) those related to Ms. Pinner's alleged bias.
The Court will discuss each group of claim <u>seriatim</u>.

### a. *Parole Hearing Conducted by a Single Examiner*

Petitioner's tenth narrative, titled "[The] Parole Board has used ex post facto to deny [Petitioner] parole," includes of the following statements:

> [The] Parole Board used current rules and procedures at [Petitioner's] five parole hearings to deny parole. Hence, 1985 rules and procedures were supposed to be used, not current, an *ex post facto violation.* . . . [D]uring his five hearings a one-person board was the prosecutor, judge, and executioner -- all in the hands of one board member. . . . Having one board member during [P]etitioner's five parole hearings is an *ex post facto* violation *. . . .*

Pet. at 41-42 (emphasis in original). These statements appear to correspond to: (1) Petitioner's conclusion that "*ex post facto* violations occurred as 'current' rules and procedures [were] used against [P]etitioner and not the correct rules and procedures of 1985," as well as to (4) Petitioner's request for relief seeking an order directing the Parole Board to "conduct [P]etitioner's hearing consistent with 1985 rules, not 'current' rules and procedures, [<u>i.e.</u>, with] two or three examiners." <u>Id.</u> at 47.

The Ex Post Facto Clause of the U.S. Constitution bars only those "enactments, which by retroactive operation, increase the

punishment for a crime after its commission."[40]  Garner v. Jones,

529 U.S. 244, 249-50 (2000) (relying on Lynce v. Mathis, 519 U.S.

433, 445-446 (1997); Cal. Dep't of Corr. v. Morales, 514 U.S.

499, 508-509 (1995); and Collins v. Youngblood, 497 U.S. 37, 42

(1990)).  While parole regulations may be laws for purposes of ex

post facto analysis, see Royster v. Fauver, 775 F.2d 527, 535-36

(3d Cir. N.J. 1985) (citing Forman v. McCall, 709 F.2d 852 (3d

Cir. 1983)), "[t]o be eligible for habeas corpus based on a

violation of the Ex Post Facto Clause, a petitioner must show

both a retroactive change in law or policy and that this change

[in parole law] caused individual disadvantage by creating a

significant risk of increasing his punishment."  Richardson v.

Pa. Bd. of Prob. & Parole, 423 F.3d 282, 284 (3d Cir. 2005)

(emphasis removed, internal quotations and citations omitted);

see also Mickens-Thomas v. Vaughn, 321 F.3d 374, 384 (3d Cir.

2003).  It follows that not every retroactive change violates the

Ex Post Facto Clause, even if the change creates a risk of

---

[40]  In Beazell v. Ohio, 269 U.S. 167, 170 (1925), the Supreme
Court explained:

> The constitutional prohibition and the judicial
> interpretation of it rests upon the notion that laws,
> whatever their form, which purport to make innocent
> acts criminal after the event, or to aggravate an
> offense, are harsh and oppressive, and that the
> criminal quality attributable to an act, either by the
> legal definition of the offense or by the nature or
> amount of the punishment imposed for its commission,
> should not be altered by legislative enactment, after
> the fact, to the disadvantage of the accused.

affecting a particular inmate's terms of confinement. See Garner, 529 U.S. at 250 (citing Morales, 514 U.S. at 509).[41]

However, as a threshold matter, it must be a "law" that makes the punishment more burdensome for ex post facto purposes. See Jubilee v. Horn, 959 F. Supp. 276, 282 (E.D. Pa. 1997). Although, in the context of parole, the Court of Appeals has stated that if parole guidelines are applied without substantial flexibility, they may constitute laws within the meaning of the Ex Post Facto Clause, see Forman v. McCall, 709 F.2d 852, 862 (3d Cir. 1983); see also Crowell v. United States Parole Comm'n, 724 F.2d 1406, 1408 (3d Cir. 1984), an inflexible provision setting forth the number of parole examiners participating in a parole hearing does not constitute a "law" amenable to ex post facto challenge, even if a change in that provision effectively substitutes a plurality requirement with the one of unanimity.[42] See Mickens-Thomas v. Vaughn, 2000 U.S. Dist. LEXIS 20859, at *29 (E.D. Pa. Aug. 22, 2000), aff'd, 321 F.3d 374 (3d Cir. 2003); see

---

[41] The Supreme Court guided that, "[t]he question is 'a matter of degree,'" see Garner, 529 U.S. at 250 (citing Morales, 514 U.S. at 507, 510), and, if the amended law neither modifies the statutory punishment imposed for any particular offenses nor alters the initial date for parole eligibility or the suitability standard, the amendment does not violate the Ex Post Facto Clause, since such amendment would (1) not change the basic structure of state parole law, but (2) merely vest the parole board with a discretionary function. See id.

[42] In addition, the regulation at issue here is indeed a flexible provision reading: "Any hearing may be conducted by a single examiner or by a panel of examiners." 28 C.F.R. 2.23(a).

<u>also</u> <u>Burnett v. Young</u>, 1984 U.S. App. LEXIS 13795, at *5 (6th

Cir. 1984) ("application of the revised manual did not violate

the [E]x [P]ost [F]acto [C]lause") (citing <u>Ruip v. United States</u>,

555 F.2d 1331, 1135-36 (6th Cir. 1977) (holding that such

provisions are mere guideposts which assist the Commission in

exercising its discretion and, as such, coming outside the

prohibition against <u>ex post facto</u> laws)).  Thus, Petitioner's

constitutional rights under the Ex Post Facto Clause were not

violated when he had his unspecified parole hearings conducted by

a single examiner in accordance with the requirements set forth

in the parole manual current at the time of those hearings.

Consequently, even if this Court is to presume that it has

jurisdiction to entertain this claim pursuant to § 2241,

Petitioner's <u>ex post facto</u> claim should be dismissed on the

merits.[43]

---

[43] Moreover, in light of Petitioner's Mandamus-I and 2241-II
litigations specifically addressing the issue of production of
1985 parole manual, Petitioner's current ex post facto challenges
(intrinsically related to his aforesaid previous production-based
litigations and unambiguously suggesting that Petitioner sought
production for the purposes of claiming an ex post facto
violation) provide this Court with another basis for dismissal of
Petitioner's ex post facto claim: abuse of writ.

    When a prisoner files multiple petitions for habeas corpus
    relief, the abuse of the writ doctrine as set forth in 28
    U.S.C. § 2244(a) may bar his claims:  No circuit or district
    judge shall be required to entertain an application for a
    writ of habeas corpus to inquire into the detention of a
    person . . . if it appears that the legality of such
    detention has been determined by a judge or court of the
    United States on a prior application for a writ of habeas

## b. *Presence of Audience and Life Testimony*

Petitioner asserts that,

[until] two days before the parole hearing [which took place on January 21, 2004], Examiner Pinner [had been] refus[ing] to allow Dr. Schwartz and [P]etitioner's parents, as well as [Mr.] Martinez at the parole hearing, whether to say a few words or as observers.[44] [During Petitioner's June 5, 2006, parole hearing,] Examiner Pinner refused to allow Dr. Hilkey's presence, the presence of [P]etitioioner's family, [Mr.] Martinez, either to say a few words or as observers.

Pet. at 34, 37.

Petitioner's aforesaid statements seem to relate to his: (1)

_____

corpus . . . .

Furnari, 2008 U.S. App. LEXIS 14512, at *20-21 (relying on Sanders v. United States, 373 U.S. 1, 9 (1963)).  "The Court in Sanders explained that a court may grant controlling weight to a denial of a prior application for habeas corpus when three criteria are met: (1) the same ground presented in the successive application was determined adversely to the applicant on the previous application; (2) the previous determination was made on the merits; and (3) 'the ends of justice' would not be served by reaching the merits of the subsequent application."  Id. at 21 (citing Sanders 373 U.S. at 11).

[44] Hence, it appears that, on January 19, 2004, Ms. Pinner notified Petitioner that Mr. Martinez, Dr. Schwartz and Petitioner's parents were allowed to attend his parole hearing. Moreover, it appears that Mr. Martinez actually appeared at the hearing, although Petitioner was dissatisfied with the fact that Mr. Martinez was neither allowed to testify as lengthily as Petitioner desired nor permitted to remain as observer of Petitioner's parole hearing after Mr. Martinez completed his testimony.  See Pet. at 34 and n.5 (accusing Ms. Pinner of being "hostile, belligerent, . . . repeatedly chill[ing Mr. Martinez'] speech by telling him how she did not want to he[a]r it [and] rudely dismiss[ing] [Mr.] Martinez and thr[owing] him out of the hearing").  Furthermore, it appears that Dr. Schwartz presented the Parole Board with his life testimony during one of Petitioner's parole hearings preceding the January 21, 2004, one. See April Opinion at 7-11 in Bivens-V, supra.

conclusion that Ms. Pinner violated his rights because she "consistently and adamantly denied [P]etitioner's experts, family members, and [Mr. Martinez an opportunity] to attend the [2006] hearing to either say a few words or as observers," and (2) request for relief that the Parole Board would "allow [P]etitioner's experts, family members and [Mr. Martinez] to speak on his behalf at his hearing." Id. at 47.

While Petitioner's desire to have his experts, family members and Mr. Martinez making statements in support of Petitioner's release at each of his parole hearings (or being present at all those hearings, either for moral support or as "observers" upon whose recollections Petitioner could rely when challenging unfavorable parole determinations) is certainly understandable, Petitioner has no right to have the entities of his choice to be present at his parole hearings, "either to say a few words or as observers."

There is no federal constitutional right to parole. See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); accord Board of Pardons v. Allen, 482 U.S. 369 (1987). However, a parole statute may be so drafted to create an expectation of parole release that is entitled to due process protection. See Greenholtz, 442 U.S. at 12; accord Allen, 482 U.S. 369. The holdings of Allen and Greenholtz suggest that the mandatory language of the federal Parole Act creates an

expectation of parole entitled to some procedural protections. See, e.g., Gambino v. Morris, 134 F.3d 156, 170, n.16 (3d Cir. 1998) (citing Kindred v. Spears, 894 F.2d 1477, 1481 (5th Cir. 1990); Solomon v. Elsea, 676 F.2d 282, 285 (7th Cir. 1982); Evans v. Dillahunty, 662 F.2d 522, 526 (8th Cir. 1981), and holding that the Parole Act creates a liberty interest entitled to a certain protection of due process, but that protection cannot exceed that the Supreme Court held applicable to the Nebraska parole statute examined in Greenholtz). Therefore, pursuant to Greenholtz, the United States Parole Board meets the due process requirements by providing an inmate with: (1) a notice of the parole eligibility hearing, (2) an opportunity to appear at that hearing and present *statements and letters on his/her own behalf*, plus (3) a statement informing him/her why parole was denied. See Greenholtz, 442 U.S. at 14-16. Nothing in the holding of Greenholtz suggests that an inmate has due process right to invite audience and witnesses of his/her choice to his/her parole hearings "either to say a few words or as observers."

Here, it appears undisputed that Petitioner's expert witnesses provided the Parole Board with their reports (and, seemingly, audiotaped oral testimony), and these reports (and testimony) were made part of Petitioner's parole file. Similarly, it appears equally apparent that Petitioner was able to provide the Parole Board with written statements or personal

letters from Mr. Martinez, Petitioner's family and from others, such as representatives of Guyanese Embassy to the United States.[45]  While Petitioner believes that he should have been afforded an opportunity to present all these statements in the form of live testimony, the Due Process Clause does not provide him such right.  See Greenholtz, 442 U.S. at 14-16.  A fortiori, there is no constitutional right to an "observing audience" of the inmate's choice during the inmate's parole hearing.

Similarly, the applicable regulation does not provide Petitioner with a right to either audience or live testimony of his witnesses of choice.  The regulation reads, in pertinent part, as follows:

> There is hereby delegated to hearing examiners the
> authority necessary to conduct hearings and to make
> recommendations relative to the grant or denial of
> parole . . . . [T]here is also *delegated to hearing
> examiners the authority* necessary to make a probable
> cause finding . . . and *to determine the witnesses who
> will attend the hearing*, including the authority to
> issue subpoenas for witnesses and evidence.

28 C.F.R. § 2.23(a) (emphasis supplied).

---

[45] Petitioner's 164-page submission is not entirely clear as to whether Petitioner actually acted upon his opportunities to submit written statements and/or personal letters from *all* entities whom he wished to be present at his hearings.  See generally, Pet., Supp.  It is, however, apparent that Mr. Martinez did testify in person during Petitioner's 2004 parole hearing and Petitioner's counsel, Mr. Greenberg, did submit at least some letters to the Parole Board.  See Docket Entry No. 1-3, at 15.

Petitioner does not challenge the constitutionality of Section 2.23, either as drafted or as applied. See generally, Pet., Supp. Moreover, Petitioner's submission is entirely silent as to the regulation. See id. All the Petition states is a blanket allegation that Ms. Pinner, somehow, violated his rights by rightfully exercising her discretion in determining which witnesses would (or would not) attend Petitioner's January 21, 2004, and June 5, 2006, hearings. However, Petitioner's mere allegations and disappointment over Ms. Pinner's decision do not provide a cognizable basis for habeas relief.[46] See, e.g.,

---

[46] It appears that Petitioner's administrative challenge to Ms. Pinner's decision to exclude live witnesses/audience under 28 C.F.R. § 2.13(b) was dismissed. See Docket Entry No. 1-3, at 15. Section 2.13 provides that

> A prisoner may be represented at a hearing by a person of his or her choice. The function of the prisoner's representative shall be to offer a statement at the conclusion of the interview of the prisoner by the examiner, and to provide such additional information as the examiner shall request. Interested parties who oppose parole may select a representative to appear and offer a statement. The hearing examiner shall limit or exclude any irrelevant or repetitious statement.

28 C.F.R. § 2.13(b).

In response to Petitioner's administrative challenge, the Parole Commission explained to Petitioner that Section 2.13(b)'s reference to a representative does not imply that the inmate has the right to invite live witnesses or audience; rather it refers to a person who, at the inmate's request, would represent the inmate at the hearing. In fact, pursuant to Section 2.13(b), Petitioner was represented by his counsel, Mr. Greenberg . See Docket Entry No. 1-3, at 15. Petitioner's instant submission and supplementation contain no allegations under 28 C.F.R. §

Coades v. Kane, 1992 U.S. Dist. LEXIS 8844 (E.D. Pa. May 22, 1992) (an inmate was not denied due process merely because an unfavorable decision was reached by a prison hearing examiner since an unfavorable decision per se is not the same as a denial of due process).

### c. *Examiner's Bias*

Petitioner's statements made part of the "Conclusion" and "Relief Sought" sections of the Petition read as follows:

> As Examiner Pinner denied [P]etitioner [parole] at the 2004 hearing where her decision was pre-made, she should not have presided at the 2006 hearing in which she relied on her previous decision of 2004. . . . Examiner Pinner [should] be recused from hearing [Petitioner's parole] as she is biased, prejudiced, and has pre-decided the case as is clear from her 2004 and 2006 decisions [to recommend the Commission to deny Petitioner parole].

Pet. at 47.

In support of his conclusion and request for relief, Petitioner asserts that Ms. Pinner's bias follows from the following facts:

> On January 21, 2004, [P]etitioner appeared before [Examiner] Pinner [for a parole hearing], in which she used the false, inaccurate, and misleading [BOP] report, ignoring [P]etitioner's exemplary prison record, the numerous recommendations from prison staff . . . and denied [Petitioner parole] without foundation. . . . It is a clear showing that Examiner Pinner's decision was already reached to deny parole,

_____

2.13(b) and does not mention the regulation.

because at the hearing she was hostile [and]
belligerent . . . . Examiner Pinner used the [BOP]
report [containing mixed favorable and unfavorable
medical opinions] to deny parole, [and] the argument
[contained in] Dr. Schwartz'[] report was completely
ignored [even though that report] clearly contradicted
the [unfavorable medical opinions in the BOP] report.
. . . While [P]etitioner was scheduled for another
parole hearing in . . . 2006, . . . Case Manager
Ferretti . . . informed [P]etitioner that Pinner had
already decided to deny [Petitioner] parole [since
Ferretti stated to Petitioner,] "She's not giving you
parole," [which is] a showing a decision was already
reached. . . . [O]n Monday, June 5, 2006, . . .
Examiner Pinner . . . once again . . . failed to review
the records or take anything in consideration as [her]
decision was already reached, and the obstruction of
[P]etitioner's parole representatives have consistently
been obstructed and up to this present time [sic.] . .
. . On June 5, 2006, Examiner Pinner disregarded Dr.
Hilkey's report and once again used [the BOP] report to
deny parole. Examiner Pinner's decision [must have
been] made prior to the hearing, [since Petitioner
found her to be] completely close-minded to any
presentation. . . . Although Examiner Pinner indicated
[that] she [was not] a psychologist, expert
testimony/reports [of Drs.] Schwartz and Hilkey fell on
deaf ear, a clear showing [of] what boilerplate
hearings [P]etitioner was confronted with: bias,
prejudice, close-minded through a systematically deaf
agency, using false, inaccurate, and misleading [BOP]
report to deny parole. . . . In fact, none of the
arguments or recommendations made by [Drs.] Schwartz
and Hilkey . . . were fit to overcome the [BOP] report,
according to Examiner Pinner [who] denied parole.

Pet. at 33-35, 37-39.[47]

_____

[47] As an additional fact supporting his allegations as to
Ms. Pinner's bias, Petitioner asserts that Ms. Pinner, presiding
over parole proceedings of inmates Coles and an unnamed inmate,
found that: (a) parole of Mr. Coles was appropriate in 2006, even
though "Coles['] release date was 2020," and (b) parole of the
unnamed inmate was appropriate in 2007, even though that "other
prisoner's release [date] was [in] 2013." Pet. at 39, n.7.

Read together, Petitioner's conclusion, request for relief and supporting facts indicate that Petitioner deduces Ms. Pinner's bias from the facts that she denied parole, she exercised her discretion as to the attending witnesses, and her statement of the grounds upon which parole was denied elaborated on the matters other than Drs. Schwartz and Hilkey's conclusions. See id. Indeed, it appears that Petitioner is of impression that the unfavorable information in the BOP report was the sole basis for denial of Petitioner's release on parole.[48]  See id.

_____

[48]  The Court notes, in passing, that Petitioner's Bivens-II, Bivens-IV and Bivens-VII actions, as well as his Mandamus-II action, indicate a long line of Petitioner's frictions with correctional officials whom Petitioner denies as  "slimy-lying" and "blood-sucking" employees of "the BOP [which] maintained its statu[r]e as the dumping ground for unemployable and an incubator for breeding corruption and nepotism [with] an on-going culture of systemic lies."  Bivens-VII, Docket Entry No. 1, at 41. Therefore, it is plausible that Ms. Pinner based, at least in part, her decision to deny Petitioner parole on the basis Petitioner's prison file reflecting these frictions.

> The Parole Commission has broad discretion to review materials helpful in determining whether to release a prisoner on parole.  [See] Goldberg v. Warden, Allenwood Fed. Prison Camp, 622 F.2d 60, 63 (3d Cir. 1980); see also . . . Melvin v. Petrovsky, 720 F.2d 9, 10 (8th Cir. 1983) (finding Parole Commission not limited to indictment and conviction in determining severity of offense and can consider other reliable information, including presentence report).  Indeed, Congress has even authorized the Commission to view [the] reports [the Commission deems relevant] "despite the knowledge that 'there are no formal limitations on their contents and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged.'"  Id. at 64 (citing Gregg v. United States, 394 U.S. 489, 492 (1969)).

Furnari, 125 Fed. App. 435, at *4-5.  However, this Court

68

Petitioner's allegations do not state a claim meriting habeas relief. A "fair trial in a fair tribunal is a basic requirement of due process. . . . This applies to administrative agencies which adjudicate as well as to courts." Withrow v. Larkin, 421 U.S. 35, 46 (1975) (citations omitted) (combination of investigative and adjudicative functions does not necessarily show a biased decision-maker); see also Morrissey v. Brewer, 408 U.S. 471, 489 (1972) (due process requires neutral and detached decision-maker for parole revocation hearing). However, "[t]o sustain a claim of [decision-maker's misconduct], there must be an extremely high level of interference by the [decision-maker] which creates a pervasive climate of partiality and unfairness." Duckett v Godinez, 67 F.3d 734, 740 (9th Cir. 1995) (internal quotations and citation omitted). To obtain habeas corpus relief on a challenge based on tribunal's misconduct, the petitioner must show actual bias, i.e., that the decision-maker treated him unfairly. See Johnston v. Love, 940 F. Supp. 738, 774 (E.D. Pa. 1996), aff'd, 118 F.3d 1576 (3d Cir.), cert. denied, 522 U.S. 972 (1997). In contrast, the petitioner's mere impressions or the mere appearance of bias does not establish bias. See id.; see also Withrow v. Larkin, 421

assesses the allegations made in Petitioner's complaint under the presumption that Petitioner is correct in his belief that Ms. Pinner's determination was based solely on the unfavorable information contained in the BOP report.

U.S. at 47.  Furthermore, an adverse ruling is not sufficient for the petitioner to make out a claim of the decision-maker's bias. See United States v. Gallagher, 576 F.2d 1028, 1039 (3d Cir. 1979).

Here, Petitioner deduces Ms. Pinner's bias from the fact that she was, in his opinion, "hostile [and] belligerent" during his parole hearing.  However, her scowling or aggressive style of communication does not mean that Petitioner's parole hearings were infested with "a pervasive climate of partiality and unfairness" requiring habeas relief.  See Duckett v Godinez, 67 F.3d at 740.

Alternatively, Petitioner asserts that Ms. Pinner was biased because her statements as to the basis for denial of Petitioner's parole elaborated on the matters other that the favorable-to-Petitioner conclusions reached by Drs. Schwartz and Hilkey. However, in the event the Parole Commission denies parole, it does not have to elaborate on every piece of evidence it considers; rather the Commission is obligated to state its reasons for denying parole.  See S. Rep. No. 94-369, 94th Cong., 2d Sess. 24-25 (1975), *reprinted in* U.S. Code Cong. & Admin. News at 335-46 (1976) (listing the information that needs to be included in a Notice of Action, none of which includes a mandatory discussion of every given report or other piece of evidence provided by the inmate or his experts to the Parole

Board).  As long as the Notice of Action provides the inmate with

"an understandable explanation of his parole status," such Notice

is proper and cannot be deemed evidence of the parole board's

prejudice.  See Shahid v. Crawford, 599 F.2d 666, 671-72 (5th

Cir. 1979); see also Furnari, 2008 U.S. App. LEXIS 14512, at *26-

27 (observing that, pursuant to  18 U.S.C. § 4203, "Congress has

given the Parole Commission great discretion concerning matters

of parole," and the Parole Commission may grant or deny release

on parole, so long as it has good cause for doing so and it

furnishes the prisoner with written notice stating the reasons

for its determination).[49]

---

[49]  The Furnari court relied, in part, on the language of 18
U.S.C. § 4206(c) (directing the Parole Commission to furnish
prisoners with a written notice stating the reasons for denial of
parole with particularity), a provision included in the Parole
Commission and Reorganization Act of 1976 repealed and replaced
by the Sentencing Reform Act of 1984 effective November 1, 1987.
See Pub. L. No. 98-473, §§ 212, 218, 98 Stat. 1987, 2027.
Consequently, it is unclear whether the obligation to provide a
notice stating the reason for denial of parole "with
particularity" remains at force.  However, it appears
sufficiently certain that the federal parole scheme entails due
process obligations delineated in Greenholtz.  See Gambino v.
Morris, 134 F.3d at 170 n.16 (relying on Kindred v. Spears, 894
F.2d 1477, 1481 (5th Cir. 1990); Solomon v. Elsea, 676 F.2d 282,
285 (7th Cir. 1982); Evans v. Dillahunty, 662 F.2d 522, 526 (8th
Cir. 1981)).  The Supreme Court in Greenholtz opined that, "when
parole is denied, [the parole board must] inform[] the inmate in
what respects he falls short of qualifying for parole," i.e.,
address the facts upon which parole was denied.  Greenholtz, 442
U.S. at 16; accord Lynch v. United States Parole Com., 768 F.2d
491, 497 (2d Cir. 1985) (utilizing the "sufficient statement of
reasons" standard rather than the "with particularity" one and
relying on Reynolds v. McCall, 701 F.2d 810, 814 (9th Cir. 1983);
Shahid, 599 F.2d at 671-72; and Garcia v. United States Board of
Parole, 557 F.2d 100, 105 (7th Cir. 1977)).  Here, the Parole

Here, Petitioner asserts that Ms. Pinner duly notified him of his parole status, although the notification created in Petitioner the impression that Ms. Pinner's lack of elaboration on Drs. Schwarts and Hilkey's conclusions was indicative of her being "close-minded." However, "close-mindedness" is not the same as partiality, and Ms. Pinner's refusal to embrace Drs. Schwartz and Hilkey's conclusions, as well as her failure to elaborate on the issue why she remained unpersuaded by these conclusions, does not signify that Ms. Pinner was biased against Petitioner.[50] Petitioner makes no allegation that Ms. Pinner's

_____

Board provided Petitioner with more than sufficient statements with regard to his 2004 and 2006 hearings. Moreover, even if this Court were to hypothesize that the currently operable standard requires a written notice stating the reasons for denial of parole "with particularity," the statements provided to Petitioner with regard to his 2004 and 2006 hearings met that standard, since the particularity requirement cannot be construed as an obligation to elaborate on every piece of evidence provided by the inmate. Cf. Globis Capital Partners, L.P. v. Stonepath Group, Inc., 241 Fed. Appx. 832, 835 (3d Cir. 2007) (defining the term "[a] state[ment] with particularity" as a statement of facts supporting the conclusions rather than an obligation to address every potentially adverse piece of evidence).

[50] Moreover, Ms. Pinner's proper exercise of her discretion in determining which witnesses may testify at Petitioner's hearings, e.g., her decision to hear Mr. Martinez' testimony only once (during Petitioner's 2004 hearing) and not have it reiterated (during the 2006 hearing), is not indicative of bias. Finally, Petitioner's conclusion that Ms. Pinner turned a "deaf ear" to the reports of Drs. Schwartz and Hilkey does not show that Mr. Pinner failed to consider all information submitted. See Docket Entry No. 1-3, at 15 (expressly stating that the decisions reached were made after consideration of "all the information [Petitioner] submitted on [his] behalf, both new and old").

determination was based on information other than in his parole hearing and file; the fact that a tribunal developed an unfavorable view of evidence cannot be labeled as unfair prejudice. Accord Furnari, 2008 U.S. App. LEXIS 14512, at *28-30 (finding that, a federal court "cannot overturn the Parole Commission's credibility determination if there is a basis for its decision [even if the petitioner] asserts that the Parole Commission improperly discredited [a document stating facts] that support his position [i.e., that he should be released on parole,] while assigning too much credit to adverse information").

Finally, the fact that Ms. Pinner twice declined to recommend Petitioner's release on parole is not a sign of bias. As this Court has already explained to Petitioner in this case:[51]

> In making [recusal] determination, the court must consider how the facts would appear to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." U.S. v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995); accord Clemens v. United States District Court for the Central District of California, 428 F.3d 1175, 1178 (9th Cir. 2005); Matter of Mason, 916 F.2d 384, 386 (7th Cir. 1990). Generally, "beliefs or opinions which merit recusal must involve an extrajudicial factor." Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 167 (3d Cir. 2004) (internal quotation marks and citation omitted). Absent the existence of such an extrajudicial factor, the record must evince a "deep-seated favoritism or antagonism on the part of

---

[51] Petitioner sought this Court's recusal on the grounds that this Court dismissed Petitioner's Bivens-IV and Bivens-V complaints. See Docket Entry No. 2.

the [tribunal] that would make fair judgment impossible." <u>Liteky v. United states</u>, 510 U.S. 540, 555 (1994). By contrast, the Supreme Court has made it clear that "[adverse] rulings alone almost never constitute a valid basis" for recusal. <u>Liteky</u>, 510 U.S. at 555. The reason for this rule is that [adverse] decisions "in and of themselves can only in the rarest of circumstances evidence the degree of favoritism or antagonism required" to prove bias. <u>Id.</u> Consequently, [the tribunal's] prior adverse ruling cannot alone show the bias necessary for disqualification under 28 U.S.C. § 455(a). <u>See</u>, <u>e.g.</u>, <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1103 (11th Cir. 2001); <u>United States v. Pearson</u>, 203 F.3d 1243, 1277 (10th Cir. 2000); <u>Leslie v. Grupo ICA</u>, 198 F.3d 1152, 1160 (9th Cir. 1999); <u>United States v. Arena</u>, 180 F.3d 380, 398 (2d Cir. 1999); <u>Matter of Hipp, Inc.</u>, 5 F.3d 109, 116 (5th Cir. 1993). This is true even if the [tribunal] consistently made adverse rulings against the party, <u>see</u> <u>McCalden v. California Library Assoc.</u>, 955 F.2d 1214, 1224 (9th Cir. 1990); <u>United States v. Mobile Materials, Inc.</u>, 881 F.2d 866, 877 (10th Cir. 1989), because an adverse decision, even if it is adverse on all issues raised, is not evidence of bias, especially when it is supported by . . . facts. <u>See</u> <u>Crenshaw v. Hodgson</u>, 24 Fed. App. 619, 621 (7th Cir. 2001) (citing <u>Gleason v. Welborn</u>, 42 F.3d 1107, 1112 (7th Cir. 1994); <u>Byrne</u>, 261 F.3d at 1103). . . . Petitioner's dissatisfaction [with the outcome of his application] does not provide a proper basis for [a tribunal's] recusal, <u>see</u> <u>Bolick v. Pennsylvania</u>, 2005 U.S. Dist. LEXIS 30140, *2 (E.D. Pa. Nov. 30, 2005) ("[the tribunal] cannot be disqualified . . . merely because [the affected party] disagrees with his decision"); <u>see also</u> <u>Securacomm Consulting v. Securacom Inc.</u>, 224 F.3d 273, 278 (3d Cir. 2000) (holding that a "party's displeasure with [adverse] rulings does not form an adequate basis for recusal"); <u>Jones v. Pittsburgh Nat'l Corp.</u>, 899 F.2d 1350, 1356 (3d Cir. 1990) ("Disagreement with [the tribunal's] determinations certainly cannot be equated with the showing required to so reflect on his impartiality as to dictate recusal") . . . .

Docket Entry No. 5, at 3-5 (original brackets omitted).

Hence, the fact that Ms. Pinner twice denied Petitioner release on parole cannot be, in and of itself, indicative of her bias, especially in light of Petitioner's concession that the information in the BOP report relied upon by Ms. Pinner did provide her with a valid basis for denial of his parole. Since Petitioner's allegations present nothing but Petitioner's displeasure with Ms. Pinner's findings, these allegations provide this Court with no basis for concluding that Ms. Pinner was biased against him. Therefore, these allegations do not merit <u>habeas</u> relief.

### C. <u>Habeas-like Claims</u>

Although Petitioner's Petition and Supplement do not expressly seek <u>habeas</u> relief, this Court cannot ignore the facts that: (1) the chapter following Petitioner's tenth narrative is titled "Case citation supporting Petitioner's immediate release" and ends up with the line that Petitioner "should be considered for immediate parole"; and (2) both sub-parts of his Supplement seek <u>vacatur</u> of the Parole Board's "decision denying [P]etitioner parole." <u>See</u> Pet. at 33-35, Supp. at 6-7. Since these statements suggest that Petitioner is challenging the outcome of a certain unspecified parole hearing (or outcomes of all his parole hearings), the legal claims implied in these statements fall within the "core" of <u>habeas</u> action and, if meritorious,

provide proper jurisdictional basis for <u>habeas</u> relief.[52]

Consequently, this Court construes the statements contained in the Supplement and the "citation" chapter of the Petition, here, in <u>2241-III</u>, as a § 2241 application ("2241-Part").

Unfortunately, Petitioner's application does not comply with the Habeas Rule obligating the litigant to "to specify all the grounds for relief, state the facts supporting each ground," and to prepare a "petition [which] substantially follow[s] either the [pre-printed <u>habeas</u> petition] form [distributed by the Clerk] or a form prescribed by a local district-court rule". <u>See</u> 28 U.S.C. § 2254 Rule 2(c). The Court, therefore, is left with the task of deducing the gist of Petitioner's claims[53] from the language of the 2241-Part, which is effectively a discussion of various legal precedents that Petitioner interprets as favorable to his cause. The import of Petitioner's reference to these cases appears to be

_____

[52] In a sense, these claims provide a <u>habeas</u> counterpart to Petitioner's <u>Bivens</u>-like allegations seeking a curative parole hearing on the grounds that Ms. Pinner was, allegedly, biased in her decision, since these <u>habeas</u>-like claims imply that she (or any other parole officer presiding over Petitioner's parole hearing) made a parole finding that was constitutionally defective.

[53] Since Petitioner did not specify the outcome of which particular parole hearing (out of his five hearings) Petitioner is now challenging, <u>see</u> <u>generally</u>, Pet., Supp., this Court is not in the position to deduce Petitioner's intent as to this issue. The only conclusion the Court can safely reach is that Petitioner is not re-challenging the outcome of the parole hearing examined by Judge Rodriguez in the <u>2241-II</u> action (since such re-challenge would present a successive petition).

that, under the holdings of these cases, he should have been released on parole because: (a) reports of Drs. Scwartz and Hilkey favor parole; (b) Petitioner's institutional achievements present Petitioner in a favorable light, and (c) parts of the BOP report are also favorable to Petitioner. See Pet. at 43-45. In other words, Petitioner urges this Court to rule that, under the precedents he cited, the Parole Board's reliance on the BOP report should be deemed "vindictive," the BOP report itself should be deemed "subjective," and "the arguments or recommendations made by [Drs.] Schwartz and Hilkey, as well as [Mr. Martinez' opinion and Petitioner's institutional achievements, should be deemed] fit to overcome the [negative aspects of the BOP] report."[54] Id. at 39, 44; Supp. at 2-7.

Since Petitioner relies on a string of legal precedents, the Court finds it helpful to include in this last part of the Court's discussion brief summaries of the facts and holdings of

---

[54]  It appears that the unspecified parole hearing(s) Petitioner challenges is/are statutory interim parole hearing(s) conducted pursuant to 18 U.S.C. § 4208(h) and corresponding regulation 28 C.F.R. § 2.14, which explains that "[t]he purpose of an interim hearing required by 18 U.S.C. 4208(h) shall be to consider any significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing."  In light of this regulatory language, Petitioner's allegations appear to suggest that preparation of medical reports by Drs. Schwartz and Hilkey, the entry of a favorable opinion by Mr. Martinez and Petitioner's completion of certain institutional programs amount to such a significant development or change in Petitioner's status as to warrant change in the date of his anticipated parole reconsideration hearing.

these cases.

The chapter following Petitioner's tenth narrative and titled "Case citation supporting Petitioner's immediate release" discusses two cases, <u>Mickens-Thomas v. Vaughn</u>, 355 F.3d 294 (3d Cir. 2004), and <u>Gambino v. Morris</u>, 134 F.3d 156 (3d Cir. 1998). In addition, Petitioner's Supplement cites <u>Wasman v. United States</u>, 468 U.S. 559 (1984); <u>Pearce v. United States</u>, 396 U.S. 934 (1969); <u>Bono v. Benov</u>, 197 F.3d 409 (9th Cir. 1999); <u>Marshall v. Lansing</u>, 839 F.2d 933 (3d Cir. 1988); <u>Solomon v. Elsea</u>, 676 F.2d 282 (7th Cir. 1982); <u>Misasi v. United States Parole Com.</u>, 835 F.2d 754 (10th Cir. 1987); <u>Dye v. United States Parole Com.</u>, 558 F.2d 1376 (10th Cir. 1977); <u>Billiteri v. United States Board of Parole</u>, 541 F.2d 938, 944 (2d Cir. 1976); and <u>Persico v. United States Dept. of Justice</u>, 426 F. Supp. 1013, 1019 (E.D. Ill. 1977).

### 1. *Mickens-Thomas*

In <u>Mickens-Thomas</u>, the petitioner, who had served forty years in prison and was 75 years old, had been convicted in a second trial in 1969 of first-degree murder and denied parole on four occasions.[55]  When the parole board was forced to defend its

---

[55]  In an action preceding <u>Mickens-Thomas v. Vaughn</u>, 355 F.3d 294, the district court found that, with respect to the petitioner's first three parole applications, the parole board actually did violate the constitutional prohibition against <u>ex post facto</u> laws.  <u>See</u> <u>Mickens-Thomas v. Vaughn</u>, 217 F. Supp. 2d

decision as to the fourth parole hearing, the parole board cited, for the first time, the petitioner's pre-incarceration history of alcohol abuse, his non-admission of guilt and his failure to complete part of the sex offender therapy.  The Court of Appeals granted the petitioner <u>habeas</u> relief directing his parole in light of the fact that the parole board's decision retroactively applied a new suitability-for-parole standard, which: (a) was specifically effective only prospectively; and (b) emphasized, as the "foremost," the parole board's concern for the protection of the public (unlike the previous standard applicable to the petitioner, which balanced the inmate's rehabilitation and liberty interest with the interest of public safety).  <u>See</u> <u>Mickens-Thomas</u>, 355 F.3d 294.

Petitioner reads the language of <u>Mickens-Thomas</u> discussing the difference in pre- and post-1996 Pennsylvania parole-suitability standards as the Court of Appeals' umbrella finding that *any* parole board has to apply pre-1996 Pennsylvania parole-suitability standard to *any* inmate.  <u>See</u> Pet. at 44-45.  However, the holding of <u>Mickens-Thomas</u> implies nothing of the kind.  <u>See</u> <u>Mickens-Thomas</u>, 355 F.3d 294.  Moreover, since Petitioner does not assert that the federal parole-suitability standard applied

570 (E.D. Pa.), <u>aff'd</u> 321 F.3d 374 (3d Cir. 2002).  The district court, therefore, granted the petitioner conditional parole and remanded the matter to the parole board for the fourth hearing. The decision of that fourth hearing was the basis of <u>Mickens-Thomas v. Vaughn</u>, 355 F.3d 294, ruling.

to him at any or all his parole hearings differed from that in operation at the time of his offense, the decision of the Court of Appeals in <u>Mickens-Thomas</u> is wholly inapposite to this case.

### 2. *Gambino v. Morris*

In <u>Gambino</u>, a prisoner was denied parole because the United States Parole Commission concluded that he was affiliated with an organized crime family. The district court denied the prisoner's petition for a writ of <u>habeas</u> <u>corpus</u>. On appeal, the Court of Appeals directed the Commission to conduct another hearing, holding that the Commission abused its discretion because it deduced a link between the prisoner and organized crime from: (a) such attenuated facts as the prisoner's marriage to the member of a family of someone who was suspected to be a member of organized crime; (b) a homicide investigation unrelated to the prisoner; (c) a police report that was not actually presented to the Commission; and (d) an informant's report, the truthfulness of which the prisoner was not allowed to challenge during his hearing. <u>See</u> <u>Gambino v. Morris</u>, 134 F.3d 156.

Neither the facts nor the holding of <u>Gambino</u> have any bearing on the case at bar. Here, Petitioner asserts that he was not released on parole because of the Parole Board's reliance on the BOP report, but concedes that the BOP report is an actual medical evaluation that was both presented to the Parole Board

and extensively challenged by Petitioner.  Hence, the holding of

Gambino, i.e., that the Commission cannot rely on attenuated

conjecture or on documents, the content of which it did not

examine or did not allow the inmate to challenge, is wholly

inapposite to the case at hand.

> [Petitioner] attempts to analogize his case to Gambino
> in which [the Court of Appeals] found that the Parole
> Commission's denial of parole was "arbitrary and
> capricious" and thus remanded the case for
> reconsideration.  But this case is distinguishable from
> Gambino because, [in Gambino, the Court of Appeals']
> conclusions [were based] on the fact that the Parole
> Commission relied on information from unnamed sources,
> a procedure that deprived the prisoner of the
> opportunity to rebut the information.  . . .  Moreover,
> in Gambino[,] the Parole Commission relied on facts
> previously found to be erroneous without [any]
> information to suggest otherwise. [Here], however,
> there is considerable information supplying good cause
> for the Parole Commission's decision. [While
> Petitioner] is disappointed by the limited weight and
> credibility that the Parole . . . Board afforded the
> [reports favorable to Petitioner's aspiration to be
> released on parole], it is apparent it had a factual
> basis for its determination.  The reports from the
> Board are thorough and reasonable.

Furnari, 2008 U.S. App. LEXIS 14512, at *31.


### 3.  *Wasman, Pearce, Bono* and *Marshall* Cases

Petitioner cites to Wasman, 468 U.S. 559, Pearce, 396 U.S.

934, Bono, 197 F.3d 409, and Marshall, 839 F.2d 933, in support

of his assertion that the Parole Board's reliance on the BOP

report should be deemed "vindictive," and the burden should be

shifted to the Parole Board, so it would prove that the BOP

report itself is objective.  See Supp. at 6-7.  However, the cases cited by Petitioner offer no support to his conclusion.

In Marshall, a petitioner sought habeas corpus relief, asserting that the United States Parole Commission had improperly applied parole release guidelines to his term of imprisonment. After the district court granted petitioner a writ, the Commission appealed, contending that the district court was not authorized to demand an explanation concerning the Commission's reasons for the release guidelines it had imposed upon petitioner.  The Court of Appeals rejected the Commission's argument, finding that the district court was authorized to demand a statement of reasons evident from the petitioner's record (rather than conclusory statements), because the relevant statute required the Commission to provide a meaningful statement of reasons for its parole decisions, and because the petitioner was entitled to insure he was held in compliance with applicable regulations.  Analogizing the actions of the Commission with an imposition of a higher sentence on a defendant who succeeded, in part, in his criminal appeal, the Marshall court explained that,

> due process forb[ids] the imposition of a tougher sentence than the defendant had received after his first trial, whenever the increased penalty was in retaliation for the successful appeal. [See] Pearce, 395 U.S. at 723-25. [In Pierce,] the Court held that the mere "threat inherent in the existence of such a punitive policy" would serve to chill appeals by other prisoners,  id. at 724 (citation omitted), and therefore that "due process also requires that a defendant be freed of apprehension of such a

retaliatory motivation on the part of the sentencing judge." Id. at 725 (footnotes omitted). To that end, recognizing the difficulty of proving the existence of a retaliatory motivation in any individual case, see id. at 725 n.20, the Court held that

> whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant *occurring after the time of the original sentencing proceeding.*

Id. at 726 (emphasis added). Where such reasons do not affirmatively appear, a federal court may void the harsher sentence and grant habeas corpus relief. [See] id. Later cases have explained that the imposition of a harsher sentence upon reconviction creates a "presumption of vindictiveness" on the part of the sentencer, which can only be overcome by an on-the-record explanation. [See] Wasman v. United States, 468 U.S. 559, 565 (1984) (quoting United States v. Goodwin, 457 U.S. 368, 374 (1982)).

Marshall, 839 F.2d at 947. Effectively, the Marshall court's "presumption of vindictiveness" articulated a habeas counterpart to a Bivens First Amendment retaliation cause of action for the claims asserting a *harsher re-sentencing* in the nature of a de facto "trial tax" lacking any on-the-record explanation.

Petitioner, however, reads this language as suggesting that a "presumption of vindictiveness" should be applied to his parole proceedings because Petitioner "has previously filed habeas corpus actions and numerous complaints concerning the abuse of discretion by the [Parole Board]." Supp. at 6. Petitioner's reading of the Marshall language, as well as the cases upon which the Marshall court relied, i.e., Wasman and Pierce, is

unwarranted.  The Parole Board's decisions did not impose a
*harsher* "re-sentencing;" it just did not allow Petitioner a more
lenient one.  Moreover, Petitioner's previous habeas and Bivens
claims were all dismissed on the merits, hence eliminating the
"vindictiveness" aspect.  Finally, since Petitioner asserts that
the Parole Board's decisions to deny him release were based on
the BOP report, which is undisputably made part of Petitioner's
record, the holding of Marshall and the cases relied upon by the
Marshall court are wholly inapposite to Petitioner's situation.[56]


### 4.    *Solomon, Misasi, Dye, Billiteri* and *Persico* Cases

In Solomon, an inmate alleged that his release on parole was
denied without good cause, that it ensued from the parole board's
reliance on factually incorrect information and its failure to
consider positive information about the inmate, and that the
notice of the decision was a mere "pro forma recitation"

---

[56] In Bono v. Benov, 197 F.3d 409, the Ninth Circuit
expressly followed the Court of Appeals for the Third Circuit's
Marshall decision and employed the test articulated in Marshall,
while clarifying that the holding of Marshall is inapplicable to
harsher re-sentencing by jury, but a parole board's decision is
more similar to a bench ruling than to a jury finding.
Consequently, the Bono court applied a presumption of
vindictiveness to a parole board's decision which *changed its
original ruling* and extended the petitioner's presumptive parole
date by 12 years after the petitioner had two *successful* habeas
petitions.  Here, Petitioner had no successful previous
petitions, and the original determination of the Parole Board
remained unchanged.

verifying the inmate's allegations.[57]  After the inmate appealed

the district court denial of <u>habeas</u> relief, the Court of Appeals

for the Seventh Circuit affirmed the district court's decision,

explaining:

> The accepted standard of review of parole
> determinations is whether the decision constitutes an
> abuse of discretion.  The authority to review Parole
> Commission decisions is thus limited.  Congress has
> given the Parole Commission the sole power to grant or
> deny parole in the exercise of its discretion. [<u>See</u>]
> <u>Billiteri v. United States Board of Parole</u>, 541 F.2d
> 938, 944 (2d Cir. 1976); [<u>see also</u>] <u>Persico v. United
> States Dept. of Justice</u>, 426 F. Supp. 1013, 1019 (E.D.
> Ill. 1977), <u>aff'd</u>, 582 F.2d 1286 (7th Cir. 1978).
> Courts have the authority to review decisions by the
> Commission which show an abuse of discretion. . . .

<u>Solomon v. Elsea</u>, 676 F.2d at 290.

The <u>Solomon</u> court further clarified that, while

> [the inmate] urges this Court to adopt a "sufficiency
> of the evidence" standard of review . . . , this
> standard exceeds that envisaged by Congress.  We choose
> to retain the traditional standard of review.  A court
> of review need only determine whether the information
> relied on by the Commission is sufficient to provide a
> factual basis for its reasons.  *The inquiry is not
> whether the Commission's decision is supported by the
> preponderance of the evidence, or even by substantial
> evidence; the inquiry is only whether there is a
> rational basis in the record for the Commission's
> conclusions* . . . . [<u>See</u>] <u>McArthur v. United States
> Board of Parole</u>, 434 F. Supp. 163, 166 (S.D. Ind.
> 1976), <u>aff'd</u>, 559 F.2d 1226 (7th Cir. 1977), <u>quoting</u>
> <u>Zannino v. Arnold</u>, 531 F.2d 687, 691 (3d Cir. 1976).

---

[57]  Asserting the incorrectness-of-information aspect, the
petitioner in <u>Solomon</u> stated that the parole board unduly relied
on his presentence reports, which--he believed--overemphasized
his involvement in the smuggling conspiracy serving as a basis
for his conviction.  <u>See</u> <u>Solomon v. Elsea</u>, 676 F.2d at 287-88 and
n. 10.

> It is this standard of review which we must use to
> evaluate the [inmate's] contentions. . . . Although it
> is true that certain factors exist which are favorable
> to [the inmate], they are only factors for the
> Commission to consider . . . . Because a rational
> basis exists in the record to support the Commission's
> conclusions, the decision of the Parole Commission must
> not be disturbed.  There has been no abuse of
> discretion by the Parole Commission.[58]

Id. at 290-91 (emphasis supplied).

Here, Petitioner reads the first excerpt from the Solomon opinion but entirely ignores the second.  See Supp. at 1-2.  He urges the Court to find that the Parole Board abused its discretion by not finding that the opinions of Drs. Schwartz and Hilkey, and the statements of Mr. Martinez, outweighed the negative conclusions contained in the BOP report.  See id. However, the Parole Board was not required to do so under the Solomon standard; to the contrary, Petitioner himself makes the case for the Parole Board, under the Solomon standard, when he asserts that the Parole Board relied on the BOP report; such reliance itself provided the required rational basis for the Board's denial of parole decision.  See Solomon, 676 F.2d at 290-

---

[58] This conclusion was expressly adopted by the Misasi and Dye courts.  See Misasi v. United States Parole Com., 835 F.2d at 758 (quoting the Solomon holding that "[t]he inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions"); Dye v. United States Parole Com., 558 F.2d at 1378 ("it is not the function of courts to review the Board's discretion in denying parole or to repass on the credibility of reports received by the Board in making its determination").

91. Consequently, Petitioner's citations to <u>Solomon</u>, <u>Misasi</u> and <u>Dye</u> advocate against, rather than in favor of, granting him <u>habeas</u> relief.[59]

This Court, therefore, finds that the 2241-Part of the

---

[59] Petitioner also contends that the Parole Board violated its rule requiring it to resolve prisoner disputes concerning the accuracy of the information presented to it by a "preponderance of the evidence standard." <u>See</u> Supp. at 2-3 (citing 28 C.F.R. § 2.19(c)). Under this regulation, if the prisoner disputes the accuracy of the information presented, "the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability." <u>Id.</u> Petitioner reads this language as offsetting that of the <u>Solomon</u> holding and asserts that the regulatory utilization of the phrases "preponderance of the evidence" and "reason and probability" mandates a finding that medical conclusions reached by Drs. Schwartz and Hilkey outweigh those contained in the BOP report (prepared by Drs. Pugh and Berry) because: (a) Dr. Berry was serving her internship at the time when she prepared the BOP report, and (b) Drs. Schwartz and Hilkey had more extensive medical experience. However, a federal court cannot make a ruling as to which medical opinion is more "weighty." Moreover, even if this Court were empowered to make such medical finding, it would have no impact on the outcome of this case, since the preponderance standard articulated in 28 C.F.R. § 2.19(c), the same as the standard articulated in Solomon, allows the Parole Board to weigh all plausible inferences that the Board could draw from evidence in the record. See Farese v. Luther, 953 F.2d 49, 53 (3d Cir. 1992). Here, the Parole Board's reasonable inferences from the negative aspects contained in the BOP report could provide the necessary "reason and probability" to validate a preponderance of evidence finding that Petitioner should not be released on parole. See id. Any finding otherwise would create an anomalous situation where the Commission would be automatically stripped of its discretion every time an inmate retains more expert witnesses (or expert witnesses with lengthier work experience) than the Commission: the 28 C.F.R. § 2.19(c) preponderance standard does not envision either a battle of experts or a competition as to who would retain more experts. The weight to be ascribed to the opinions of expert reports lies within the province of the Commission.

Petition and Supplement, which contains Petitioner's <u>habeas</u>-like challenge with respect to his unspecified parole hearing(s), does not merit <u>habeas</u> relief.  Moreover, the exhibits submitted by Petitioner indicate that he was denied parole in 2004 and 2006 on the basis of evidence well supporting the Parole Board's decision under the standard articulated in <u>Solomon</u> and its progeny, as well as under 28 C.F.R. § 2.19(c).[60]  Finally, the decision of

---

[60] Petitioner contends that his release on parole was invariably denied solely because of one reason: the negative assessments contained in the BOP report. However, contrary to Petitioner's contention, the 2004 and 2006 denial-of-parole decisions were based on a *multitude* of reasons (only one of which was the Parole Board's reliance on the BOP report), and these reasons were extensively detailed to Petitioner in the BOP's Notices of Action.  See Docket Entry No. 1-3, at 15-16, 23. Petitioner, however, either consciously ignores or misreads these reasons, and maintains that he has been denied release on parole solely because of the negative statements contained in the BOP report.  For instance, he wholly ignores the rationale of the following Commission statement:

> You claim that the crime you committed . . . (contracting for the murder of a woman who spurred your romantic advances) was "out of character," which allegedly removes any danger that you would commit a similar crime in the future.  However, you submit no new information that would support that claim.  The Commission cannot accept your contention that this crime was "out of character" merely because of your general good behavior while serving your sentence . . . .  The facts remain that you committed the crime, not on impulse, but with predetermination and planning, and that you subsequently attempted to escape responsibility for it . . . .  In the case of a crime "out of character," the Commission would expect to see unusual external circumstances leading up to the crime, and a rapid expression of remorse and acceptance of responsibility from the offender once it was over. Such elements are completely absent in your case.

the Parole Board examined by Judge Rodriguez in <u>Bivens-II</u> cannot be revisited by this Court in light of the prohibition against second and successive petitions.[61]  Consequently, as drafted, Petitioner's application will be dismissed for failure to assert that he is in confinement in violation of the United States constitution or federal laws.

However, since Petitioner asserts that he had five parole hearings,[62] this statement indicates that there could be up to two parole hearings with respect to which: (1) this Court might presume (on the basis of Petitioner's opinion that the BOP report was the invariable sole reason for denial of his release on parole) that the Parole Board's substantive decision was proper; but (2) cannot presume that Petitioner was duly notified of the reasons for the Parole Board's decision (since Petitioner's submission, exhibits included, does not shed light on this

---

Docket Entry No. 1-3, at 15.  Petitioner, however, dismisses the aforesaid reasons as a basis considered by the Parole Board in its reaching the decision to deny parole, even though he appears to be aware of the statement.  See Pet. at 23, 30-31 (reading the aforesaid excerpt as an irrelevant and erroneous Parole Board statement that he has been refusing to take responsibility for his offense *at his initial parole hearing*, i.e., an event that took place a full decade after the murder, and to this day).

[61]  Petitioner's 2241-II action was filed in 2002, and it appears that 2241-II addressed Petitioner's 2001 hearing.

[62] Petitioner does not specify whether the phrase "five parole hearings" refers to the total of five interim hearings or to the total of one initial parole hearing, plus four interim hearings.

issue).

Consequently, this Court, while dismissing Petitioner's submission as drafted, will retain temporary jurisdiction over this matter in order to allow Petitioner to submit a "re-amended" petition in the event he desires to challenge *procedural sufficiency* of notices of action he received after either one of these two unspecified hearings.[63]  See <u>Furnari v. Warden, Allenwood Fed. Correctional Inst.</u>, 218 F.3d 250 (3d Cir. 2000) (parole board abused its discretion by failing to follow its regulation requiring a statement of reasons for denying the parole).

In the event Petitioner elects to file a "re-amended" Petition, he is expressly reminded that: (a) under Habeas Rule 2(e), he should state his challenges to one specific parole hearing (rather than to numerous hearings), and (b) he should either complete a pre-printed form or submit a similar application, since a § 2241 petition *cannot* be a voluminous compilation of stream-of-consciousness-like narratives detailing every incident of Petitioner's two-decades-long incarceration. <u>See</u>, <u>e.g.</u> Pet. at 24 (providing such descriptions); <u>compare</u> Habeas Rule 4; <u>George v. Smith</u>, 507 F. 3d 605, 607 (7th Cir.

---

[63]  This Court's decision to grant Petitioner leave to "re-amend" his Petition ensues from the Court's concern that Petitioner might otherwise be prevented--by operation of the abuse of writ concept--from challenging this issue in his future petitions. See Furnari, 2008 U.S. App. LEXIS 14512, at *20-21.

2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that a [multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees . . . . A buckshot [pleading] that would be rejected if filed by a free person - say, a suit complaining that A defrauded [him], B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner"). Petitioner is also warned that any future attempt to relitigate claims under § 2241 that have already been adjudicated in a federal court, including all claims adjudicated herein, in 2241-III, will result in dismissal of his petition for abuse of the writ. If Petitioner disagrees with any substantive adjudication herein, his sole remedy is to file a timely appeal from a final order and not to once again raise these issues in this action or in some other § 2241 petition.[64]

---

[64] Local Civil Rule 7.1(g) permits a party to obtain a reconsideration of the court's decision, see, e.g., NL Indus., Inc. v. Commercial Union Ins., 935 F. Supp. 513, 515 (D.N.J. 1996), if the movant meets his burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted). Reconsideration is not to be used as a means of expanding the record to include matters not originally before the court. See Bowers v. NCAA, 130 F. Supp. 2d 610, 613 (D.N.J. 2001); Resorts Int'l. v. Greate Bay Hotel and Casino, Inc., 830 F. Supp. 826, 831 & n.3 (D.N.J. 1992); Egloff v. New Jersey Air National Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988). A

**IV. CONCLUSION**

For the foregoing reasons, Petitioner's instant submission, consisting of the Petition and Supplement, will be dismissed. Specifically,

1.  Petitioner's request for detection of such statutes and/or case law that would provide a basis allowing the Petition to proceed past the <u>sua sponte</u> dismissal stage will be dismissed, with prejudice, for lack of jurisdiction.

2.  Petitioner's request for production of the 1985 Parole Board Manual will be dismissed, with prejudice, for lack of jurisdiction.

3.  Petitioner's request for a parole eligibility hearing by this Court will be dismissed, with prejudice, for lack of jurisdiction.

4.  Petitioner's request for complete expungement of his BOP

---

fortiori, L. Civ. R. 7.1(g) does not allow parties to restate arguments which the court has already considered. See G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990). Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process. See See Bowers, 130 F. Supp. 2d at 612 (citing Bermingham v. Sony Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994), and G-69, 748 F. Supp. at 275); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 162 (D.N.J. 1988); see also NL Indus., Inc., 935 F. Supp. at 516 ("Reconsideration motions . . . may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment"). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite [or, here, a fifth bite] at the apple." Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted).

record will be dismissed, with prejudice, for lack of jurisdiction or, in the event jurisdiction exists, as a second and successive petition and pursuant to the doctrine of <u>res judicata</u>.

5.  Petitioner's request for partial expungement of his BOP record will be dismissed, with prejudice, for lack of jurisdiction or, in the event jurisdiction exists, for failure to allege facts suggesting violation of Petitioner's federal rights.

6.  Petitioner's speculative allegations that his future parole hearings will violate Petitioner's federal rights will be dismissed for lack of jurisdiction.  Such dismissal is without prejudice to Petitioner's bringing appropriate legal actions in the event such future parole hearings take place, and Petitioner, after assessing the events of such future parole hearings in light of the legal regime explained to Petitioner in the instant Opinion, develops a <u>bona fide</u> belief that his federal rights were violated by such hearings.

7.  Petitioner's allegations that his rights under the Ex Post Facto Clause were violated by his unspecified parole hearings presided by one rather than two examiners will be dismissed, with prejudice, for lack of jurisdiction and failure to assert a violation of Petitioner's federal rights.

8. Petitioner's allegations that his rights were violated by the parole examiner's decision to deny Petitioner's request for presence, during his parole hearings, of audience and for life testimony by the experts and other persons of Petitioner's choice unspecified parole hearings presided by one rather than two examiners will be dismissed, with prejudice, for lack of jurisdiction and failure to assert a violation of Petitioner's federal rights.

9. Petitioner's allegations that his rights were violated by the parole examiner's bias will be dismissed, with prejudice, for lack of jurisdiction and failure to assert a violation of Petitioner's federal rights.

10. Petitioner's allegations that his rights were violated in light of the holdings of <u>Mickens-Thomas v. Vaughn</u>, 355 F.3d 294 (3d Cir. 2004), <u>Gambino v. Morris</u>, 134 F.3d 156 (3d Cir. 1998), <u>Wasman v. United States</u>, 468 U.S. 559 (1984), <u>Pearce v. United States</u>, 396 U.S. 934 (1969), <u>Bono v. Benov</u>, 197 F.3d 409 (9th Cir. 1999), <u>Marshall v. Lansing</u>, 839 F.2d 933 (3d Cir. 1988), <u>Solomon v. Elsea</u>, 676 F.2d 282 (7th Cir. 1982); <u>Misasi v. United States Parole Com.</u>, 835 F.2d 754 (10th Cir. 1987), <u>Dye v. United States Parole Com.</u>, 558 F.2d 1376 (10th Cir. 1977), <u>Billiteri v. United States Board of Parole</u>, 541 F.2d 938, 944 (2d Cir. 1976), and <u>Persico v. United States Dept. of Justice</u>, 426 F. Supp. 1013, 1019

(E.D. Ill. 1977), will be dismissed, with prejudice, for

failure to meet the requirements of Habeas rule 2 and

failure to assert a violation of Petitioner's federal

rights.

Petitioner's motion for appointment of unspecified counsel

will be denied, without prejudice, as unwarranted at the instant

juncture.  Petitioner's OTSC-I and OTSC-II applications for

appointment of the attorney of Petitioner's choice will be denied

with prejudice.[65]

This Court will allow Petitioner to submit an amended § 2241

petition in the event Petitioner desires to challenge the

procedural sufficiency of a notice of action Petitioner received

from the Parole Commission.[66]  The Court will retain temporary

---

[65]  See Taylor v. Dickel, 293 F.3d 427, 431 (8th Cir. 2002)
(clarifying that the fact that a civil litigant's counsel is
appointed does not eliminate judicial limitations on the
litigant's choice of counsel and citing Lee v. Crouse, 284 F.
Supp. 541, 544 (D. Kan. 1967), aff'd, 396 F.2d 952 (10th Cir.
1968), holding that civil litigant who had counsel appointed to
him/her is not entitled to select his counsel"); see also Fortner
v. McNeil, 2008 U.S. Dist. LEXIS 41507, at *4 (M.D. Fla. May 27,
2008) ("The trial court had no constitutional obligation to
appoint standby counsel, or counsel of Petitioner's choice"); cf.
Irving v. People, 2008 U.S. Dist. LEXIS 16242, at *23 (E.D. Cal.
Feb. 29, 2008) ("[even] an indigent criminal defendant, [who] has
a Sixth Amendment right to appointment of counsel, [does not have
the] 'right [to] be represented by the lawyer he prefers'")
(quoting Wheat v. United States, 486 U.S. 153, 159 (1988), and
citing Faretta v. California, 422 U.S. 806 (1975), and Gideon v.
Wainwright, 372 U.S. 335 (1963)).

[66]  The exhibits provided by Petitioner indicate sufficiency
of notices provided by the Parole Commission after Petitioner's
2004 and 2006 hearings.  All challenges to the parole hearings

jurisdiction over this matter for the purposes of entertaining

such amended petition.

An appropriate order accompanies this Opinion.


**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

Date: **July 23, 2008**

---

asserted in Petitioner's 2241-II action are presumed barred.
Hence, Petitioner may, if he so desires, challenge in his amended
petition only the procedural sufficiency of one notice of action
*not* related to his 2004 or 2006 hearing, or to Petitioner's
parole hearing addressed by Judge Rodriguez (presumably, the 2001
parole hearing).  If Petitioner desires to challenge the
procedural sufficiency of more than one notice of action, he must
file a new petition for the other challenge.